## LIZZIE FARRELL v. ANNIE B. PUTHOFF.

(Filed September 10, 1903.)

1. PARTIES—Gift Not Fraudulent, When. Where all of the parties are before the court, it is not error in an action that should be prosecuted by the heirs of a decedent, to make an order permitting them to prosecute such action in lieu of the administrator, who had no right to maintain it.

2. SAME. A married man, during his life time, may give away his separate property, real or personal, and such gift will be valid and binding as against his lawful heirs after his death, and where the effect of such gift is not to defraud his creditors, the administrator of his estate cannot maintain an action to recover the property so transferred.

(Syllabus by the Court.)

Farrell v. Puthoff.

*Error from the District Court of Lincoln County; before Jno. H. Burford, Trial Judge.*

*J. B. A. Robertson* and *J. R. Keaton,* for plaintiff in error.

*Emery A. Foster,* for defendant in error.

Opinion of the court by

BURWELL, J.: Fenton Dowling and Catherine Dowling were husband and wife and they had one child whose name is Lizzie Farrell. Fenton Dowling obtained a divorce from his wife in the probate court of Oklahoma county, but it is contended that the decree was void, and that the probate court had no jurisdiction to grant the same. Shortly after procuring this divorce he married one Anna B. Puthoff; but it seems that they did not agree, and on April 6th, 1897, which was about five years after their marriage, they entered into an agreement of separation, and, as provided in that agreement, he deeded to her the northwest quarter of section fifteen, township thirteen, north of range six east of the Indian Meridian, in Lincoln county, Territory of Oklahoma.

On January 12th, 1898, Fenton Dowling died, without having made a will. One Newton Thornton, was duly appointed administrator, and on May 11th, 1899, he commenced an action to recover the above described land for the heirs at law of the deceased. Subsequently, he filed a dismissal of the case, but Catherine Dowling, the first wife, and her daughter, Lizzie Farrell, objected to the case being dismissed, but the trial court dismissed it, so far as the administrator is concerned, and substituted the first wife and her

daughter, as plaintiffs, and directed the action to be prosecuted by them, but under the original title, without further service.

It is contended that this was error. We think not. The administrator had no interest whatever in the action. The transfer from Dowling to his second wife, even though she were not his lawful wife, was not in fraud of his creditors. So far as the record discloses, there were no judgments against him or his estate, nor had the administrator allowed claims in excess of the funds in his hands. An administrator, under certain circumstances, may maintain an action to set aside a conveyance made by a decedent in fraud of his creditors, but no sufficient showing is made in the petition. (*Field v. Andrada, et al.* [Cal.] 39 Pac. 323.)

In Bump on Fraudulent Conveyances (4th ed.) sec. 433, it is said:

"A fraudulent transfer is good as against the grantor, his heirs, executors, administrators, parties claiming under him, and his agents, vendees and grantees."

All of the parties were before the court; and, under the authority of *Armour Packing Company v. Orrick,* 4 Okla. 661, it was not error to substitute the heirs at law as plaintiffs, in lieu of the administrator.

On July 25th, 1899, Catherine Dowling died. Her death was suggested by Lizzie Farrell, who asked that the action be prosecuted under section 4315 of statutes of 1893, which is as follows:

"That where there are several plaintiffs or defendants in an action, and one of them dies, or his powers as a personal representative cease, if the right of action survive to or against the remaining parties, the action may proceed,

the death of the party or the cessation of his powers being stated on the record."

The trial court overruled the application, and dismissed the action. It perhaps should also be stated that Dowling's second wife conveyed the land in question to her daughter by a former husband, but, it is contended, without any consideration, although the answer alleges a valid consideration, stating the amount; but we deem this conveyance unimportant, for the reason that, if the legal title had remained in the original grantee, his second wife, the plaintiff could not recover. The land was not the homestead of Dowling and his first wife. It was his separate property, and she had no interest whatever in it, further than he was obliged to support her during his life, provided he was not legally divorced; and, under the record, this court holds that his divorce proceedings were void.

Section 2967 of the statutes of 1893, provides:

"Except as mentioned in section 2296 (which compels the husband to support his wife) neither husband nor wife has any interest in the property of the other, but neither can be excluded from the other's dwelling."

Under this section, Dowling had a right to convey his separate property, and give it to Anna B. Puthoff Dowling. He had lived and cohabited with her, as husband and wife, for five years, and as a complete settlement he gave her this land and other property, and he, during his life-time, after having gone through the form of a marriage ceremony and living with her as he did, and entering into the contract of separation, and executing the deed of conveyance, would not have been heard to say that the deed was without consideration. So far as the record shows, he, in good faith, intended

to convey the legal title to her, and once the gift was complete, no one but creditors, or some one representing them or their interests could recall it. If he could not have cancelled the deed during his life time, then his first wife and daughter cannot do so after his death. It is true that the law makes it possible for a man during his life, to give practically all of his property to those to whom he owes no obligation, and deprive those of his own household of the comforts of life; but this is only an incident to the right of husband and wife to own and control separate property. Treating the case under consideration in its most favorable light for the plaintiff, the conveyance of the land from Dowling to the grantee was simply a gift, which was complete, and the possession delivered to her long before his death. As he was bound by it during his life, so are his heirs bound after his death.

In *Williams v. Williams,* 40 Fed. Rep. 521, the Circuit Court of the United States said:

"The main question, in its broadest sense, is simply this: Can a married man give away his property, during coverture, for the purpose of preventing his wife from acquiring an interest therein after his death? The law seems to be that if such gift is *bona fide,* and accompanied by delivery, the widow cannot reach the property after the donor's death. * * * * Neither the wife nor children have any tangible interest in the property of the husband or father during his life-time, except so far as he is liable for their support, and hence he can sell it or give it away without let or hindrance from them. Of course the sale or gift must be absolute and *bona fide,* and not colorable only. And if the sale or gift would bind the grantor, it would bind his heirs."

The case of *Lines v. Lines* (Pa.) 21 Atl. Rep. 809, was

where a man had given away personal property (but, under our statute, a husband can convey real estate the same as personal property, except as to the homestead) and the court said:

"The first proposition cannot be sustained. It is the settled law of this state that a man may do what he pleases with his personal estate during his life. He may even beggar himself and his family, if he chooses to commit such an act of folly. When he dies, and then only, do the rights of his wife attach to his personal estate. She then becomes entitled to her distributive share, and of this she cannot be deprived by will or any testamentary paper. 'Who is so ignorant,' said Chief Justice Gibson, in *Ellmaker v. Ellmaker,* 4 Watts. 91, 'as not to know that a husband may dispose of his chattels during the coverture, without his wife's consent, and freed from every *post mortem* claim by her?' This point was expressly decided and thoroughly discussed by the late Justice Sharswood in *Pringle v. Pringle,* 59 Pa. St. 281, where it is said that 'a man's wife and children have no legal right to any part of his goods, and no fraud can be predicated of any act of his to deprive them of the succession.' (See also *Dickerson's Appeal,* 115 Pa. St. 198, 8 Atl. Rep. 64.) It is sufficient to announce a rule so firmly settled without discussing it."

*Small v. Small,* (Kans.) 42 Pac. 323, was a case where a man, during his life time, deeded practically all of his property to his children. The wife claimed after his death that this was a fraud upon her. The court said:

"There is no reason why a wife whose husband has deserted her, and refused to perform the duty of maintenance, or who, by cruel treatment, has compelled her to leave his house and commence proceedings for divorce and maintenance, should not be viewed as a quasi-creditor in relation to the alimony which the law awards to her. So long as she

is receiving maintenance, and is under his wing, as it were, she is bound by his acts as to his personal estate; but when she is compelled to become a suitor for her rights, her relation becomes adverse, and that of a creditor in fact, and she is not to be balked of her dues by his fraud.

"Recognizing this distinction, it would seem that Rebecca Small, while residing with her husband in the most amicable relations, could not have maintained an action to set aside or annul the advancements or gifts to the children, nor to compel either her husband or the children to account to her for the same; and as these advancements and gifts were valid as to her and valid as to Daniel Small when made, they formed no part of the estate at his death. But we need not go so far in this case. The reasoning in *Padfield v. Padfield, supra,* as to the 'Married Woman's Law' in Illinois is of much force here. In some states property acquired during coverture is known as 'community property,' and partakes to some extent of the nature of partnership property between husband and wife; but our legislation is in the opposite direction, manifesting a purpose to maintain, as far as practicable, the separate rights of husband and wife as well as to accumulations during as before the existence of the marriage relation, and each is entitled to dispose of his or her goods and chattels, with a slight modification as to mortgaging the same."

And again in the same decision:

"We are aware that the authorities are not all in harmony upon this subject, but the cases asserting a contrary doctrine are generally under statutes or customs different from those of Illinois and Kansas, and we think the weight of authority in states having statutes upon this subject of the same general nature as our own, establishes the doctrine herein announced. * * We are of the opinion that the rights of Rebecca Small are controlled by the will and the contract of May 9th, 1888. If there was any real estate or personal

property in Illinois or elsewhere, not disposed of by the will nor included in the contract, of course she is entitled to her proper share of the same."

There was no error in dismissing the action. The judgment of the trial court is hereby affirmed at the cost of appellant.

Burford, C. J., who presided in the court below, not sitting; Gillette, J., absent; all of the other Justices concurring.