### HAMIL et al. v. HAMIL et al.

No. 14831—Opinion Filed Oct. 28, 1924.

Rehearing Denied Jan. 27, 1925.

**Divorce—Alimony—Action Against Nonresident—Jurisdiction of Property—Making One in Possession a Party.**

Where the plaintiff, a resident of this state, brings suit for divorce and alimony, and alleges that the defendant is a nonresident but has property within the jurisdiction of the court, describing same in her petition and publication notice, and obtains service by publication, she may make any person having possession of the defendant's property, or holding the same in trust for him, a party to such action for the purpose of applying the property in payment of the alimony that may be awarded her, and this will be sufficient seizure of the property to give the court jurisdiction of same, and to render judgment for alimony against the defendant.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Kingfisher County; J. C. Robberts, Judge.

Action by Emma Hamil against James H. Hamil, Irving Hamil, and James M. Hamil. Judgment for plaintiff, and James H. Hamil and Irving Hamil appeal. Affirmed.

D. K. Cunningham and Rittenhouse & Rittenhouse, for plaintiffs in error.

McKeever, Moore & Elam, for defendants in error.

Opinion by JONES, C. This suit was instituted in the district court of Kingfisher county on May 2, 1922, by the defendant in error Emma Hamil, plaintiff in the trial court, against James M. Hamil, James H. Hamil, and Irving Hamil, defendants in the trial court; this appeal is prosecuted by James H. Hamil and Irving Hamil; the defendant James M. Hamil, in this court is named as one of the defendants in error. The suit was for divorce and alimony. The plaintiff alleged that she and the defendant James M. Hamil were married in 1918, and lived together as husband and wife until a short time prior to the institution of this suit, in May, 1922, that one child was born to this union, Hugh M. Hamil, and plaintiff asked for the care and custody of her child, and for maintenance. The plaintiff further alleged in her petition that the defendant James M. Hamil was the owner of several different tracts of land located in Kingfisher and Garfield counties, Okla., and one tract in Cowley county, Kan., specifically describing each tract in her petition, and alleging that the legal title thereof was in the name of James H. Hamil, and that the defendant James M. Hamil is possessed of, and is the owner of a large amount of personal property, and for grounds for divorce alleges cruel treatment and abandonment. And asks that said property be impressed with a lien to secure any judgment for alimony and for support and maintenance of her minor child that she may recover in this cause, and that such portion of said real-estate as may be necessary be sold to pay same.

The defendants James H. Hamil and Irving Hamil answered by way of general denial, and specifically deny that the court has jurisdiction to try and determine this cause of action, averring that the plaintiff was not a resident of Kingfisher county, Okla., at the time of the filing of this suit, May 2, 1922, and specifically deny that they hold the land or any property in trust, and the said James H. Hamil avers that he is the owner of all real property mentioned in plaintiff's petition, and acquired same by purchase and in good faith.

The record further discloses that the defendant James M. Hamil made special appearance challenging the jurisdiction of the court to adjudicate this cause, and alleges that he and the said Emma Hamil were residing in Old Mexico, where they had established a permanent home and place of residence, and further answering denies all of the matters set up by the plaintiff in her petition as grounds for divorce, and generally denies all the allegations of plaintiff's petition. This special appearance and

answer was filed by D. K.. Cunningham, as attorney for James M. Hamil, who on the day. of the trial announced to the court that he was not authorized to represent, or to make the appearance made for the defendant James M. Hamil, and asked leave to' withdraw the pleading filed. The record also discloses that in the deposition of the said James M. Hamil he stated that D. K. Cunningham did not represent him and was never authorized to represent him, and on this showing the court permitted counsel to withdraw from the case, and withdraw the pleadings, and thereupon proceeded with the issue of divorce involved in the case, and after hearing testimony of the plaintiff and one other witness granted the divorce as prayed for, and granted the custody of the child to its mother, Emma Hamil, which proceedings were had on April 27, 1923. and then proceeded with the hearing on the issues involving .the matter of alimony, and the rights of property as between plaintiff, Emma Hamil, and the defendants James H. Hamil and Irving Hamil. And on April 30, 1923, rendered judgment sustaining the allegations of plaintiff's petition against the defendants James H. Hamil and Irving Hamil, wherein the court held that the defendant James M. Hamil was, at the time of his marriage with this plaintiff, the owner of all the various tracts of land described in plaintiff's petition, the legal title of which had been, prior to the marriage of plaintiff and defendant, fraudulently and without consideration and as a voluntary transaction, transferred by said James M. Hamil to the defendant James H. Hamil for the purpose of cheating and defrauding this plaintiff, and that the legal title thereof the said James H. Hamil holds in trust for the said James M. Hamil, and rendered judgment in favor of the plaintiff and against the defendant James M. Hamil for alimony in the sum of $6,300, and in the sum of $2,500 for the support, care, and education of the minor son of plaintiff and defendant, Hugh M. Hamil, and $800 for counsels fee, and further provided that said real property should be charged with the payments of the said amounts, and that a sufficient amount thereof be sold under the order and direction of the court for the payment and satisfaction of said judgment.

The defendants James H. Hamil and Irving Hamil filed a motion for a new trial, which was duly overruled, and from which order and judgment of the court this appeal is prosecuted.

Appellants set forth various assignments of error, and first urge the proposition of lack of jurisdiction on the part of the court to grant the decree of divorce or to take jurisdiction of this cause for any purpose, and insist that the plaintiff's petition on its face shows that both plaintiff and defendant were nonresidents of Oklahoma, and were living in Old .Mexico where they separated on or about the 15th day of April, 1922, and the plaintiff, Emma Hamil, had never reestablished her residence in Kingfisher county, Okla., at the time of the institution of this suit, and had not been an actual resident in good faith for one year next preceeding the filing of the petition, and calls attention to section 4963, Rev. Laws 1910, requiring residence for one year. And cited the case of Beach v. Beach, 4 Okla. 359, 46 Pac. 514, in support of this contention, and also assert that an action for alimony alone can only be brought for cause for which a divorce may be granted, and that therefore the court having no jurisdiction of the divorce proceedings, necessarily had no jurisdiction to render judgment for · alimony. This issue was clearly presented to the court in the trial of the case, and the record discloses that plaintiff and defendant were married as alleged in 1918, and immediately removed to Kingfisher county, Okla., where the defendant had formerly lived, and took up their residence on one of· the quarter sections of land involved in this controversy and lived there until in 1920. And according to the evidence of the plaintiff, which is practically undisputed, no appearance being made for the defendant and that portion. of his deposition contradicting the testimony of the plaintiff upon the grounds of divorce being objected to and not admitted in evidence by the .court for the reason that counsel had withdrawn the answer of the defendant and withdrawn from the case, so far as the issue of divorce was concerned, in the early part of 1920, she then being in poor health, at the solicitation of her husband, the defendant James M. Hamil, she was induced to leave their home in Kingfisher county, ostensibly for the purpose of taking a trip to California for the benefit of her health, which she did, and in going to California they took what is known as the southern route, and on their arrival at El Paso, Tex., the defendant induced plaintiff to go into Old Mexico, and went to Chihuahua, where they resided for some six or eight months, and then removed to Juarez, Mexico, just opposite the city of El Paso, Ttx., and soon after their arrival there the plaintiff, at the. suggestion of the defendant, crossed the river to El Paso on a shopping tour, leaving all of her personal effects and her baby, Hugh M. Hamil,

in the care and custody of the defendant, and upon her return to Juarez the defendant had absconded with the child and all of her personal effects, and she was unable to discover his whereabouts, whereupon she returned to her home in Kingfisher county, Okla., which she at no time had ever thought of abandoning, and instituted this divorce proceeding, and sometime subsequent thereto, and prior to the trial of this case, she located the defendant and her child at El Paso, Tex., and for the purpose of securing the custody of her child went to El Paso and entered into an agreement with the defendant, whereby she agreed to withdraw the divorce proceedings and continue to live with him, and took up her residence at the same hotel or boarding house where the defendant was residing with their minor child, and after a short time, having secured the possession of the child, the first opportunity presented, took her child and returned to Oklahoma. Plaintiff also testified to acts of cruelty and misconduct on the part of the defendant. Upon this showing the court granted the plaintiff a divorce and the custody of her minor child, finding that she was a resident of Kingfisher county, Okla., and entitled to maintain the suit, and we think there was sufficient evidence to justify the judgment of the trial court, and the judgment of trial courts should not be disturbed by this court on questions of fact where there is evidence reasonably tending to support same. On the trial of the issue as to ownership of the property, largely consisting of real estate, the evidence discloses that the defendant James M. Hamil, husband of this plaintiff, had secured title to these lands many years prior to the marriage of plaintiff and defendant, during the life of his first wife, the mother of the defendant James H. Hamil, who died in 1905, that thereafter, in about 1912, the defendant James M. Hamil remarried, and in about 1914 was divorced from his second wife, and it seems from the evidence that there was a property settlement made by the said James M. Hamil and wife number two, and that at about this time the defendant James M. Hamil conveyed a portion of the lands involved in this suit to the defendant James H. Hamil, some of which was reconveyed later to the defendant James M. Hamil, and in about 1917 the defendant James M. Hamil executed deeds of conveyance to all his property, which is here involved, which is apparently all of the real estate which he has ever owned, to the defendant James H. Hamil, and placed the deeds in the hands of his brother, Irving Hamil, and at the direction of the defendant James M. Hamil the said

Irving Hamil delivered said deeds to the defendant James H. Hamil, in 1921, and same was recorded on the 26th day of May, 1921. The defendant James H. Hamil contends that he purchased the lands in controversy from his father, and at the time the deeds were delivered to him had paid for same in full. He states that the negotiations for the purchase of said lands began as early as 1906, at which time his father was financially involved, and that it was agreed that he, the said James H. Hamil, would take charge and work the farms and pay to the defendant James M. Hamil all of the revenue derived from same over and above running expenses until such time as he had paid the purchase price agreed upon, and that in 1921 they had a settlement whereby it was disclosed that the said James H. Hamil had over paid his father, James M. Hamil, four or five hundred dollars. It seems that James M. Hamil during all of this time had exercised control and dominion over the farms, paying the taxes, and kept all of the records and books pertaining to the business, and the only evidence offered in support of the defendant James H. Hamil's contention was his own testimony, and in contradiction of this evidence the plaintiff introduced in evidence questionaires made out by the defendant James H. Hamil, in 1917, subsequent to the execution of the deed involved, preparatory to his induction into the military service, in which he states that he owned no land, and that he was a tenant of his father, James M. Hamil, and the plaintiff's evidence, together with that of the defendant, discloses that the teams and implements used by the said James H. Hamil in farming and cultivating the farms were the property of and belonged to the defendant James M. Hamil, and plaintiff takes the position that the monies paid to the defendant James M. Hamil by James H. Hamil represented the rental value or one-half of the production of said farms, and that the various payments which he contends he has made are nothing more than the payment of rents; and the trial court seems to have accepted this view of the case, and found the lands in controversy to be the property of James M. Hamil, held in trust by the defendant, James H. Hamil, and impressed same with a lien for the payment of the judgment rendered in this case, and we are not prepared to say that the judgment of the trial court is not supported by the preponderance of the evidence.

The record further discloses that the said James M. Hamil dealt extensively in the stock business, and that in 1917 he had a sale of stock which brought him about $6,-

000, and in 1919 he sold some $10,000 or $12,000 worth of stock. The judgment of the trial court is not attacked by appellants on the grounds of insufficiency of evidence, but upon the grounds of lack of jurisdiction. And also urge the proposition that subsequent creditors cannot attack the validity of the transfer of property, and that the plaintiff in this case, having married the defendant after the execution of the conveyances here alleged to be fraudulent, is in the position or attitude of a subsequent creditor and therefore cannot raise this question. If the conveyances were being attacked solely on the grounds of fraudulent conveyance for the purpose of defeating creditors or others interested in the estate, this contention might be meritorious, but the plaintiff alleges that the property is held in trust, that no consideration passed, and the court seems to have treated it as such, and our statutes, section 8462, provides that trust relations may be created by operation of law, and in this case the court found that no consideration had passed, and we take it that there is a distinction in cases where the conveyance is set aside on the ground that it was made for the purpose of defrauding creditors, which may be done, although a valuable consideration passed, and where one seeks to impress land with a lien for the payment of the defendant's liability, upon the ground that the property is held in trust and for the benefit of the defendant, and the court in this case held that the land was held in trust by the defendant James H. Hamil for his father, James M. Hamil, and whether the defendant James M. Hamil had conceived the purpose of defrauding any one at the time that he executed the deeds of conveyance or not we think is not material, if the property in fact is his and held in trust by his son, James H. Hamil, we think for the purpose of this suit it is immaterial what his purpose may have been in making such conveyance.

The question most seriously urged is that no jurisdiction was obtained by the court, by reason of service by publication, which would justify the court in rendering a judgment for alimony and impressing the property of James M. Hamil with a lien whereby the judgment for alimony might be satisfied. From an examination of section 250, Comp. Stat. 1921, we find that it provides that:

"Service may be had by publication in any of the following cases: * * *

"In actions brought to obtain a divorce or alimony or annulment of the contract of

marriage, where the defendant resides out of the state;

"In an action brought against a nonresident of the state or a foreign corporation having in this state property or debts owing them sought to be taken by any of the provisional remedies or to be appropriated in any way * * *"

—which we think gives the court jurisdiction to render judgment for alimony, and we find other authorities for seizing the property of the defendant within the jurisdiction of the court to satisfy the judgment. Service by publication under the general rules of law is not sufficient to justify a judgment for alimony against a nonresident defendant, but there is a different rule applied where there is property of the defendant within the jurisdiction of the court. 19 Corpus Juris, p. 288, under the title, "Property Within Jurisdiction of Court," says:

"It has been held, however, that property within the jurisdiction of the court may be subjected to a decree granting alimony against a nonresident defendant who has been constructively served with process in a divorce suit; but the soundness of this rule has been questioned; and the rule has not been extended to money in the hands of a third person. Such a decree has of course no vitality except as to the property. It has been held that, the proceeding in such cases being in their nature in rem, the property must be described in the petition for divorce and alimony, also that the notice of publication should contain a description of the husband's property within the jurisdiction of the court, and also the nature of the relief demanded. A mere general personal judgment or decree in such cases is not sufficient. It has been held that the property of the husband need not be attached or formally seized, but there is authority to the effect that, even if the property is not seized under an attachment, or some other writ, some control of it must be taken or assumed by the court, as by the appointment of a receiver or the like."

And under this rule many authorities hold that where the property within the juridiction of the court has been subjected to attachment or where a receiver has been appointed to take charge of same, that this clearly gives the court jurisdiction, and in 1 R. C. L. p. 886, art. 26, the author says:

"On the other hand, a number of decisions hold that a court has jurisdiction to award alimony on substituted or constructive service, even though no specific property has been actually subjected to its jurisdiction, provided that an averment is made describing the property which is sought to be subjected to payment of the judgment, and no-

tice thereof is given to the defendant by publication or otherwise. * * *"

The record in this case discloses that the land sought to be subjected to the payment of alimony was specifically described in the petition, and was also specifically described in the notice of publication, that the defendant James M. Hamil had actual notice of these proceedings,—his deposition was offered in evidence in the trial of the case. This rule, we think, is based on good reason, and alone would be sufficient to maintain the jurisdiction of the trial court, under the provision of our statute.

In the case of Thurston v. Thurston et al., 59 N. W. 1017, the Supreme Court of Minnesota announces another rule, which we think clearly gives jurisdiction in this case, and in the third paragraph of the syllabus the court said:

"Held, further, she may make any person having possession of the said husband's property, or holding the title to the same in trust for him, a party to such action for the purpose of applying the same in payment of the alimony awarded her, and this will be sufficient seizure of the property to enable her to proceed by constructive servise against her said husband."

And in the body of the opinion the court said:

"If the property of Thurston in this state is in the possession of the Rothchilds or the title to it is in the name of one or both of them (the Rothchilds) obtaining jurisdiction of them is a sufficient seizure of the property by the court to enable it to proceed against the property by constructive service on Thurston."

This is a parallel case with the case at bar, in that James H. Hamil, who holds the property in trust, was made a party defendant, which brings the case clearly within the rule.

In the case of Murray v. Murray, 47 Pac. 37, the Supreme Court of California lays down the following rule:

"The wife's claim for maintenance is within the general powers of a court of equity to grant, and is not dependent on the statute; and, since plaintiff's demand may be charged specifically upon the defendant's property, described in the complaint and sought to be subjected, the court has power to appoint a receiver at the beginning of the action.

"In such case, where defendant is a nonresident, by means of the receiver's possession of the property, and the due publication of the summons, etc., the court acquires jurisdiction to subject the property seized to the satisfaction of its lawful judgment"

—which announces the rule that we are not dependent upon statutory provisions in cases of this kind, and that the appointment of a receiver was sufficient to give the court jurisdiction, and in the case of Hanscom v. Hanscom et al., 39 Pac. 885, the Court of Appeals of Colorado announces the following rule:

"An action for alimony is a proceeding in rem, within the meaning of Code, art. 41, providing for service by publication in such proceedings.

"A court of equity, independent of statute, has jurisdiction to award alimony, even when no divorce is sought.

"Where a husband, after having made fraudulent conveyances of his property to defeat the rights of his wife, has absconded, a court of equity will, in an action by the wife for alimony, set aside such conveyances, and subject the property to a lien for the alimony awarded."

And in the body of the opinion, on p. 886, the court said:

"It is true, generally, that the holder of a legal demand must reduce his claim to judgment against the debtor, and in some way make it a lien upon the property sought to be reached, before he can institute proceedings to annul a conveyance made in fraud of his rights; but where the debtor has absconded, and cannot be reached by the process of the court, leaving behind him property, which, by reason of its situation or character, cannot be subjected to the payment of his liabilities in any proceeding at law, the creditor may resort to equity in the first instance, and in the same proceeding have his claim established, charged against the debtor's property, and all obstructions in the way of its enforcement removed."

And in the case of Rogers v. Rogers et al., 143 Pac. 408, the Supreme Court of Kansas announces the following rule, which we think, like the other authorities cited, is applicable to the case at bar, and is as follows:

"In an action for divorce and alimony commenced upon service by publication, the petition and notice described the property sought to be appropriated as alimony by stating that the defendant's father had died intestate, owning a tract of land, leaving a widow and five children, his sole heirs, stating, however, that the defendant (and the plaintiff) now own an undivided onetenth in an undivided one-half interest in the above described land. The husband did not appear, and on the trial and without notice the petition and publication notice were amended by striking out the words italicized in the above quotation, and judgment was rendered for divorce, awarding to the wife the undivided one-tenth of the

tract as alimony. Afterwards in this action for partition the divorced wife claimed the one-tenth so awarded to her, but she was only given one-twentieth upon the ground that the judgment for alimony was void as to the excess over the one-tenth of the one-half referred to in her original petition for divorce."

And in the body of the opinion, we find the following statement:

"The presence in a county of any land belonging to a nonresident defendant subjects such land to the power of the court for that county, and if the defendant be advised that land will be sold under a mortgage or under an attachment, or will be partitioned, or that the title to land will be quieted, or the like, jurisdiction to proceed is complete. When jurisdiction has once attached, every subsequent act of the court taken pursuant to the petition is but the exercise of jurisdiction, which may extend to any tract of land made the subject of the action by the petition."

And the Rogers Case cites the case of Wesner v. O'Brien, 56 Kan. 724, 44 Pac. 1090, 32 L. R. A. 289, 54 Am. St. Rep. 604, where it was held, under the old code allowing publication service in actions for divorce against a nonresident, that lands situated in the county and described in the petition and notice could be appropriated as alimony.

These authorities, we think, are conclusive of the right of plaintiff to maintain this action, and to give the court jurisdiction in every particular.

The appellee calls attention to the cases of Buffalo v. Letson, 33 Okla. 261, 124 Pac. 968, and Bennett v. Bennett, 15 Okla. 286, 81 Pac. 632, which in some respects are applicable, in our judgment, but the case of Thurston v. Thurston, supra, announces the rule that should control in cases of this character, wherein it holds that the making of the party who holds the property in trust a party defendant, gives jurisdiction and clearly determines the issue involved in this case in favor of the plaintiff and against the defendants. The question raised by appellants as to the residence of the plaintiff and her right to maintain this action is largely a question of fact and under the evidence, as disclosed by the record, we think the judgment of the court was supported, in that the plaintiff, Emma Hamil, had never established a residence elsewhere, and that it was her intention at all times to maintain her home in Kingfisher county, Okla., which is a question largely of intent, and difficult to refute except where it can be shown that the party has in fact established a home elsewhere,

and the evidence is wholly lacking of any proof of this fact. We therefore conclude that there is no error appearing in the record which would justify a reversal of this case, and recommend that same be affirmed.

By the Court: It is so ordered.