## SIMS v. SIMS.

No. 19596. Opinion Filed May 26, 1931. Rehearing Denied June 30, 1931.

Billups & Billups, for plaintiff in error.

J. C. Helms, for defendant in error.

McNEILL, J. This action comes to this court to review the judgment of the district court of Seminole county, Okla., rendered on the 25th day of June, 1928. The parties will be referred to as they appear in the trial court. Quillie C. Sims, plaintiff in error, as plaintiff, and May Sims, defendant in error, as defendant.

The plaintiff instituted suit to quiet title in plaintiff to an undivided one-twelfth interest in a tract of 120 acres of land in Seminole county. Said plaintiff alleged, in substance, that James W. Sims, his father, died on or about the 20th day of April, 1922, seized of 120 acres of land in Seminole county; that R. L. Sims, his son, was thereafter decreed by the county court of said county to be one of the heirs at law of said decedent, and as such, the owner of one-twelfth undivided interest in and to said premises; that on the 21st of February, 1927, the said R. L. Sims by warranty deed conveyed all his right, title, and interest in and to the same to the plaintiff herein, the present owner thereof; that on the 27th day of January, 1927, the defendant filed in the office of the county clerk in and for Seminole county a certified copy of the journal entry entered in the district court in and for Oklahoma county, cause No. 39874, entitled May Sims, Plaintiff, v. Roy Sims, Defendant, and alleged that the same purports to be a judgment and as such purports to constitute a lien upon the interest of the said R. L. Sims, otherwise known as Roy Lee Sims, in and to the said premises, and that the same is not a lien, but that the same constitutes a cloud upon the title of plaintiff in and to said premises, and by reason thereof prays that the title of plaintiff be quieted and confirmed.

To this petition, May Sims, the defendant herein, who was the plaintiff in said cause No. 39874, entitled May Sims v. Roy Sims, filed an answer and cross-petition. She alleged, in substance, that said Roy Lee Sims and R. L. Sims are one and the same person, and is the husband of said defendant; that said defendant filed on the 27th day of January, 1927, in the office of the court clerk of Seminole county, a certified copy of the said journal entry of judgment as the same appears of record in the district court of Oklahoma county in the aforesaid action No. 39784 and the same shows the amount due upon said judgment and that no sum has ever been paid thereon to the clerk of the district court of Oklahoma county as provided by said judgment; that the aforesaid conveyance from her husband, R. L. Sims, to Quillie C. Sims, the plaintiff herein, is fraudulent, illegal, and void, and of no force and effect in that the said brothers connived, conspired, and confederated together for the sole purpose of placing all property of said Roy Sims out of the name and ownership of the said Roy Sims and beyond the reach of said defendant herein; that said scheme and said conspiracy was agreed upon by and between said brothers to cheat and defraud said defendant out of her just and equitable interest, lien, and ownership in and to said premises; that said plaintiff knew that said defendant was the wife of said Roy Sims and knew that the said Roy Sims attempted to procure a divorce from the said plaintiff on and before the 22nd day of September, 1923, and that his petition for divorce in aforesaid action No. 39874 was by the district court of Oklahoma county refused and denied; and that said defendant herein did procure the judgment attached to plaintiff's petition allowing her support money in the sum of $75 per month; also that said plaintiff knew that said Roy Sims had paid no part of said judgment and was seeking to evade the same; that said plaintiff herein knew that the said Roy Sims had fled and departed from Oklahoma county to parts unknown, and said plaintiff knew the whereabouts of said Roy Sims, and having full knowledge of all these facts and circumstances, the two brothers entered into said conspiracy to defeat the defendant from procuring the satisfaction of her said judgment; that the said plaintiff paid no consideration for said property, is holding the same for and in behalf of his brother, the said Roy Sims, and for the sole and only purpose of cheating and

defrauding the defendant herein; that the said Roy Sims has always ignored said judgment and refused to comply with the same, and that said judgment remains wholly unpaid and unsatisfied and defendant prays that the relief of plaintiff be denied; that the certified copy of the judgment be a valid and subsisting lien upon the real estate of Roy Sims of Seminole county, Okla., from and after the 27th day of January, 1927; that the attempted conveyance of warranty deed from Roy Sims to his brother, Quillie C. Sims, as evidenced by warranty deed as attached to plaintiff's petition, be vacated and set aside and held for naught and be declared of no force and effect, and that defendant have such other and further relief as to the court may seem just and equitable.

The plaintiff filed a reply by way of general denial, and the matter came on for hearing on the 25th day of January, 1928 before the Honorable W. J. Crump, assigned district judge. The court held that the burden of proof was upon the defendant to establish her allegation of fraud and conspiracy, and after evidence was introduced from both sides the court found that the said conveyance from R. L. Sims was made to his brother, Quillie C. Sims, the plaintiff herein, for the purpose of defrauding defendant herein out of her rights under the judgment rendered by the district court of Oklahoma county and ordered the said deed canceled, vacated, and set aside, and decreed and impressed a lien upon the land in controversy for all sums then due under the judgment rendered in the district court of Oklahoma county. The court denied the plaintiff relief in his action to quiet title in and to himself to the premises in question.

The evidence showed that R. L. Sims filed a suit for divorce against May Sims, defendant herein, in Oklahoma county, Okla., and that said defendant filed therein an answer and cross-petition praying for separate maintenance. The court denied R. L. Sims a divorce and granted a decree to said defendant for separate maintenance, requiring said plaintiff to pay to his said wife the sum of $75 per month. No appeal was ever taken therefrom. This decree was granted September 22, 1923. It seems that no money was ever paid by the said Roy Sims for maintenance under said decree, and that thereafter his whereabouts were unknown to said defendant. James W. Sims, the father of Quillie C. Sims, the plaintiff herein, and R. L. Sims, the husband of defendant herein and the grantor of the said deed of conveyance to said Quillie C. Sims, died on the 20th of April, 1922, seized of 120 acres of land in Seminole county at the time of his death. R. L. Sims was decreed by the county court of Seminole county to be the owner of an undivided one-twelfth interest therein on the 27th day of February, 1927. The evidence on the part of Quillie Sims shows that his brother, R. L. Sims, returned to Oklahoma and visited him and his mother sometime in June, 1926, and at that time discussed with him and his mother about making a deed to his part of the estate of his deceased father to his brother, Quillie C. Sims. Quillie C. Sims states that the consideration was, using his own language, as follows: "* * * If I would stay with mother and take care of her he would deed me that property." At this time the said Quillie C. Sims was a minor, about 20 years of age, living with his mother and attending school. The land was transferred by said R. L. Sims to his brother, Quillie C. Sims, on the 21st day of February, 1927, and acknowledged before a notary public in the state of Michigan. The evidence further shows that said Quillie C. Sims prior thereto had conferred upon him his majority rights, and that thereafter an oil and gas lease was executed by which the heirs received the sum of $50 an acre, which occurred about a year prior to the hearing of this controversy in Seminole county. The evidence indicates that the mother of Quillie C. Sims was solely dependent upon her own sources of income, receiving about $300 in rentals from property in the town of Bowlegs. Quillie C. Sims knew that his brother had been ordered by the district court of Oklahoma to pay his wife the sum of $75 per month, and knew that no part of this had ever been paid at the time he took the deed in question.

Mr. J. C. Helms, attorney for defendant herein, testified that Quillie C. Sims came to his office during the month of July, 1926, and stated that Quillie C. Sims told him that he and his brother, Roy, would see to it that May Sims did not get any of Roy's property, and on another occasion, in February, 1927, after the deed in question had been delivered to Quillie C. Sims, in reponse to a question as to whether or not he had paid anything for the property, he answered: "Not so you could tell it." However, Quillie C. Sims denies that he had any such conversation.

The question of the fraudulent conveyance was properly before the court, and the court had jurisdiction to determine this question between the plaintiff, Quillie C. Sims, and the defendant herein, May Sims. No question has been presented as to the legality of the divorcement proceedings and the judg-

ment rendered by the district court of Oklahoma County in reference to the same. So we assume that the decree is a valid, binding, and lawful decree between the parties thereto, and that the same was properly filed for record in the manner provided by law in the office of the court clerk of Seminole county, Okla., on the 27th day of January, 1927.

Counsel for plaintiff contend that a decree for ma'ntenance or alimony does not become a lien on the real estate of the party against whom such decree is rendered unless the court expressly makes it a lien in its decree, and that, inasmuch as the court did not make it a lien on any real estate of plaintiff's grantor, the filing of the copy of said decree in Seminole county would not impress any lien on the premises in question as provided for by section 690, C. O. S. 1921; and that by reason thereof plaintiff was entitled to have said title quieted as against any right of defendant by reason of the filing of such decree; or, in other words, if defendant herein sought to have her rights under said decree enforced, that it should be by attachment and contempt proceedings.

Counsel for plaintiff in support of their contention cite the case of Scott v. Scott, 80 Kan. 489, 103 Pac. 1005. In said case, the trial court stated in its decree, in part, as follows:

"That the property rights of said parties be settled as per the terms of said stipulation. That plaintiff be barred from any further alimony in or to defendant's real or personal property. That she have no right in the real estate set out in the petition."

In that case it is to be observed that the trial court made the positive provision "that plaintiff be barred from any further alimony in or to defendant's real or personal property," and "that she have no right in the real estate set out in the petition." It is apparent that the court desired the realty of the defendant to be free from any lien in order that the defendant might at any future time pass title thereto free from any lien of his wife, and the Supreme Court of that state very properly held in that case in view of the decree itself that the same could not be enforced as a lien against the property of her former husband.

Section 5271, C. O. S. 1921, provides:

"Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration, or made in bad faith, or for the purpose of hindering, delaying, or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

Section 6016:

"A debtor, within the meaning of this chapter, is one who, by reason of an existing obligation, is or may become, liable to pay money to another, whether such liability is certain or contingent."

Section 6017:

"A creditor, within the meaning of this chapter, is one in whose favor an obligation exists, by reason of which he is, or may become entitled to the payment of money."

Section 6020:

"Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

In the case at bar, the defendant herein was a judgment creditor of the grantor, and was, at the time of the conveyance, his lawful wife, This court said, in the case of Adams v. Wallace, 94 Okla. 73, 220 Pac. 872, in the second paragraph of the syllabus as follows:

"The statutes against fraudulent conveyances should be liberally construed so as to include within their protection all persons who have interests and demands of which they may be defrauded."

. And in the body of the opinion, the court states (quoting from Buffalo v. Letson, 33 Okla. 261, 124 Pac. 968):

"That a wife with a decree for alimony in her behalf is entitled to avail herself thereof was decided by the Supreme Court of the territory of Oklahoma in the case of Bennett v. Bennett, 15 Okla. 286, 81 Pac. 632, 70 L. R. A. 864. In the discussion of that case, the court said: 'In the case of Small v. Small, 56 Kan. 1, 42 Pac. 323, 30 L. R. A. 243, 54 Am. St. Rep. 581, a decision rendered by the Supreme Court of Kansas and a decision which is cited with approval by our own Supreme Court in the case of Farrell v. Puthoff, 13 Okla. 164, 74 Pac. 96, the Supreme Court of Kansas says:

"'There is no reason why a wife whose husband has deserted her, and refused to perform the duty of maintenance, or who, by cruel treatment, has compelled her to leave his house and commence proceedings for divorce and maintenance should not be viewed as a quasi creditor in relation to the alimony which the law awards her. So long as she is receiving maintenance, and is under his wing, as it were, she is bound

by his acts as to his personal estate; but, when she is compelled to become a suitor for her rights, her relation becomes adverse, and that of a creditor in fact, and she is not to be balked of her dues by his fraud. Section 2774 of Wilson's Statutes 1903 provides: 'Every transfer of property, or charge thereon, made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor.' Now, if the wife, technically speaking, is not a creditor, she is included in the term 'other person,' in the statute regarding fraudulent conveyances; and when the husband, by cruel treatment, compels the wife to leave him and brings an action for divorce and alimony, she is a quasi creditor in relation to the alimony which the law awards to her. Tyler v. Tyler, 126 Ill. 525, 21 N. E. 616, 9 Am. St. Rep. 642; Small v. Small, 56 Kan. 1, 42 Pac. 323, 30 L. R. A. 243, 54 Am. St. Rep. 581; Farrell v. Puthoff, 13 Okla. 159, 74 Pac. 96."

In the case of Johnston v. State Bank of Commerce, 129 Okla. 46, 263 Pac. 123, in reference to transactions between those related by blood or marriage concerning the question of attacking a conveyance as fraudulent aganst creditors, the court states:

"In a suit in equity attacking a conveyance of land as fraudulent against creditors, the fact that the parties to the conveyance are related by blood or marriage does not, of itself, establish fraud in such transfer; but such fact of relationship may be considered in connection with other evidence tending to impeach the transaction; and, in such case, especially if between near relations, who are members of the same household, the transactions will be given much closer scrutiny than if between strangers."

In the case of Buffalo v. Letson, 33 Okla. 261, 124 Pac. 968, the court states:

"* * * A conveyance of real estate made in bad faith or for the purpose of hindering, delaying, or defrauding any creditor, or other person, is void as against all persons to whom the maker is at the time indebted, or, under any legal liability, and where a husband against whom there is pending a suit for divorce transfers real estate to a party who takes the same with full knowledge of the rights of the wife and for the purpose and intent of taking from her any right of alimony therein, the transfer is void."

To the same effect see Miller v. Smith, 109 Okla. 203, 235 Pac. 225, and Hamil v. Hamil, 106 Okla. 14, 232 Pac. 823.

In the case of Hartshorne v. Hartshorne, 67 Okla. 43, 155 Pac. 508, the court states:

"It has been declared by the Supreme Court of the United States that a decree for alimony becomes a judicial debt of record against the husband. Barber v. Barber, 21 How. 582, 16 L. Ed. 226. And the same general doctrine is supported by the following authorities: Allen v. Allen, 100 Mass. 373; Chase v. Chase, 105 Mass. 385; Morrison v. Morrison, 49 N. H. 69; Wood v. Wood, 61 N. C. 538."

Also:

"It therefore appears that this court had authority to enter the decree awarding plaintiff in error alimony pendente lite, and that such judgment, when certified copy thereof was filed with the court clerk of Logan county, became a lien upon the real estate of defendant in error located in such county, and that the clerk of this court was authorized to issue an execution upon such judgment," etc.

When a party seeks the jurisdiction of a court of equity to have his title quieted as against a solemn decree for alimony placed on record from another county, the court has jurisdiction to determine whether or not the conveyance by which he claims his title was made for the purpose of cheating and defrauding the party for whom the alimony had been granted. Buffalo v. Letson, supra; Hamil v. Hamil, 106 Okla. 14, 232 Pac. 823. In the Hamil Case, supra, the court cites the case of Hanscom v. Hanscom, 6 Colo. App. 97, 39 Pac. 885, as follows:

"A court of equity, independent of statute, has jurisdiction to award alimony, even when no divorce is sought.

"Where a husband, after having made fraudulent conveyances of his property to defeat the rights of his wife, has absconded, a court of equity will, in an action by the wife for alimony, set aside such conveyances, and subject the property to a lien for the alimony awarded."

And, in the body of the opinion, the court states:

"It is true, generally, that the holder of a legal demand must reduce his claim to judgment against the debtor, and in some way make it a lien upon the property sought to be reached, before he can institute proceedings to annul a conveyance made in fraud of his rights; but where the debtor has absconded, and cannot be reached by the process of the court, leaving behind him property, which, by reason of its situation or character, cannot be subjected to the payment of his liabilities in any proceeding at law, the creditor may resort to equity in the first instance, and in the same proceeding have his claim established, charged against the debtor's property, and all obstructions in the way of its enforcement removed."

We are of the opinion that it is unnecessary to determine in this case whether or not a judgment for divorce awarding the

wife alimony properly filed with the court clerk in another county in which the realty of the husband is situated, becomes a lien on the property of the husband against whom such decree is rendered. The issue herein presented to the trial court, as in the Hamil Case, supra, was in reference to the determination of the question as to whether the transfer was fraudulent as to the rights of the wife who had been awarded a solemn judgment by the district court of Oklahoma county. After that question was determined, by the trial court of Seminole county, then the question was whether or not that court, sitting as a court of equity, had the authority, independent of the statute, to impress the rights of the defendant herein, as to the unpaid installments then due under such decree, upon the lands in question. We conclude that the trial court correctly determined the rights of the parties herein, except as to the cancellation of the deed in question.

As stated in the case of Hanscom v. Hanscom, supra, a court of equity, independent of statute, has jurisdiction to award alimony; and it must necessarily follow that such a court can enforce its orders, by impressing its judgment as a lien upon realty owned by the defendant, if in its opinion it is in the furtherance of what is fair and just. The filing of a decree of divorce with the court clerk may or may not strictly constitute a lien upon the real estate of the party sought to be charged thereby. However, it does not license or authorize such party to commence machinations of fraud and deception to render such an order of the court nugatory and ineffective. Such a course of conduct should not be countenanced in a court of equity, and if there is a final judgment decreeing the husband to pay as alimony a certain amount either in gross or in installments and said order or judgment does not impress the same as a lien on any realty which the husband then or thereafter may acquire, said husband should not be permitted to use said statute as a weapon to purposely evade and circumvent this solemn order or judgment of the court whenever it becomes final by contumacious acts and conduct in failing, neglecting, and refusing to comply with its provisions, and to further shield himself therefrom by leaving the state beyond the processes of the court so that the decree cannot be enforced by contempt or attachment proceedings. In cases of such character a court of equity has full power and authority to determine the good faith of a transaction whereby such a husband conveys all of his realty to a brother, who then comes into a court of equity cognizant of all the facts

and seeks to have the title to said premises so acquired quieted against a decree of the court, appearing on the court clerk's record properly docketed in the county in which the realty is situated, requiring his grantor to pay to said grantor's wife monthly installments then due and unpaid for separate maintenance.

In an equitable action, the findings of the trial court should be sustained, unless it appears his findings are clearly against the weight of the evidence; and the findings of the trial court should be strongly persuasive, and should not be set aside unless the Supreme Court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence. Speaks v. Speaks, 98 Okla. 57, 224 Pac. 533; Nelson v. Golden, 84 Okla. 29, 202 Pac. 308; Rosen v. Martin, 102 Okla. 65, 226 Pac. 577; Drummond v. Harris, 105 Okla. 228, 232 Pac. 18.

We conclude that the judgment of the trial court should be modified in that the deed in question should not be canceled, but same should be adjudged void, junior, and inferior in so far as the same affects the enforcement of the rights granted to defendant herein by the decree of the district court of Oklahoma county, for the unpaid monthly installments found to be due thereunder, and that the same in all other respects should be affirmed. The judgment of the trial court is modified and affirmed in accordance with the views herein expressed.

LESTER. C. J., CLARK. V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur.