Norris N. IRVIN, Administrator of the Estate of Nellie Mae Thompson Irvin, Deceased, Appellant,

v.

Maggie THOMPSON et al., Appellees.

No. 44415.

Supreme Court of Oklahoma.

June 27, 1972.

Rodgers & Gurley, Blackwell, Montgomery & Curtis, Fairview, for appellant.

Houk & Houk, Fairview, Mitchell, Mitchell, DeClerck, Cox & Halstead, Enid, for appellees.

DAVISON, Vice Chief Justice.

The appellant, plaintiff in the trial court, prosecutes this action, as administrator of his deceased wife's estate and individually, against appellees, the deceased wife's mother, brother and sister, defendants in the trial court, to set aside transfers of real and personal property by the deceased wife to one or more of the defendants. The transfers were made without consideration and without plaintiff's knowledge or consent about 2 years before the wife's death at a time she knew she had a malignant tumor.

The real property consisted of an undivided ⅔th interest therein which she had inherited from her father. This ⅔th interest was transferred by deeds in equal share to the defendants. The personal property consisted of substantial accounts in the Fairview Savings & Loan Association and the Watonga Savings & Loan Association. The transfer of the savings and loan accounts were made by changing the ownership of the accounts from Nellie Mae Thompson Irvin to Nellie Mae Thompson Irvin and Maggie Thompson, Joint Tenants with right of survivorship. Maggie was the mother of Nellie Mae. These accounts were established in substantial amounts before Nellie Mae's marriage to plaintiff. Thereafter the accounts were increased from income Nellie Mae received from her ⅔th interest in farms inherited from her father. Both the real and personal property, so transferred, were the separate properties of Nellie Mae; neither was acquired by joint industry during coverture. No children were born of the marriage.

The trial court sustained a general demurrer to plaintiff's petition. Plaintiff then filed his amended petition as Administrator and Individually, which stated in part:

"7. That NORRIS N. IRVIN, husband of NELLIE MAE THOMPSON IRVIN, had no knowledge whatever of the execution or existence of the Deeds described above until some period of time after the death of his wife which occurred on August 31, 1964, and that said Deeds were secret conveyances executed by NELLIE MAE THOMPSON IRVIN without consent or knowledge and were executed with the secret and fraudulent intent and purpose of defeating the rights of succession of the lawful heirs to be of NELLIE MAE THOMPSON IRVIN,

deceased, and of that estate's right to possession to all of the above described real property during the pendency of the administration proceedings.

"8. That the Defendants, MAGGIE THOMPSON, CHARLES THOMPSON, and MAUDIE FIREBAUGH, participated actively in the fraud that has been attempted to be perpetrated upon the lawful heirs of NELLIE MAE THOMPSON IRVIN, deceased, and their participating in her estate under the Laws of Succession of the State of Oklahoma.

"9. That the Deeds and the Accounts in the Fairview Savings and Loan Association and the Watonga Savings and Loan Association referred to above were mere devices and contrivances on the part of NELLIE MAE THOMPSON IRVIN to defeat the rights of succession of the lawful heirs to be of the said NELLIE MAE THOMPSON IRVIN, and more specifically NORRIS N. IRVIN, her surviving husband; that the said NELLIE MAE THOMPSON IRVIN did not intend to part with control or benefit resulting from her interest in and to said real and personal property and, consequently did not divest herself of actual ownership therein, but only created an illusory transfer which is both invalid and unlawful. That the said NELLIE MAE THOMPSON IRVIN did retain complete control, use, and enjoyment of her interests in said real and personal property; and rental income from said real property was paid to NELLIE MAE THOMPSON IRVIN during her lifetime. That the rental income from the real property was paid to Plaintiff as Administrator of the Estate of NELLIE MAE THOMPSON IRVIN, deceased."

The trial court sustained a motion to strike all parts of the petition except the introductory paragraph and the prayer. This order had the same effect as one sustaining a general demurrer. Plaintiff appealed from the final order to the Court of Appeals, Division No. 90, which reversed the judgment of the trial court holding the amended petition stated a cause of action. Irvin v. Thompson, Okl.Ct.App., 464 P.2d 775.

Defendants in their answer denied all allegations of plaintiff's amended petition except such as were explained or admitted. Defendants explained that the real property involved was inherited from their father who died February 22, 1944; that. the share of Nellie Mae Thompson Irvin was an undivided ⅔th and that Nellie Mae deeded her interest to defendants by deeds dated December 13, 1962, about two years before her death, and the deeds were recorded December 31, 1962. Further answering the defendants specifically denied that they had at any time either past or present, engaged in any type of fraud upon the plaintiff.

Upon trial of the case before the court without a jury, the trial court rendered judgment for defendants.

For the reasons hereinafter set forth, we affirm the judgment of the trial court.

■ It is to be noted first that plaintiff in his amended petition states two different theories, somewhat inconsistent, as grounds for relief. In paragraphs 7 and 8, hereinabove set forth, plaintiff treats the transfers, as intended to be real and not illusory, for "the secret and fraudulent intent and purpose of defeating the rights of succession of the lawful heirs to be of Nellie Mae Thompson Irvin." Although we held in Sanditen v. Sanditen, Okl., 496 P.2d 365, that depending upon the nature of ownership or acquisition of property there are circumstances under which the conveyances by one of property to some one other than his or her spouse may be in fraud of the marital rights of the other spouse, we made it clear that we still hold to the doctrine of Farrell v. Puthoff, 13 Okl. 159, 74 P. 96. We there held: "A married man, during his lifetime, may give away his separate property, real or personal, and such gift will be valid and binding as against his lawful heirs after his death, and where the effect of such gift is not to defraud his creditors, the administrator of his estate cannot maintain an action to recover the

property so transferred." See 32 O.S.1961, § 4, and 16 O.S.1961, § 13.

In the case before us there are no creditors. Accordingly, since the property here involved was without question the separate property of plaintiff's deceased wife, its transfer by her was not and could not have been, as a matter of law, a fraud upon her heirs.

In paragraph 9 of plaintiff's amended petition, as hereinabove set forth, plaintiff claims that his deceased wife did not make an actual transfer of the properties here involved; that by execution of the deeds of transfer she did not intend to convey the real and beneficial interest in the property but only the bare legal title; that the transfers were illusory and not real for the purpose of defeating the rights of succession of the lawful heirs; that she retained complete control, use and enjoyment of her interest. In support of this position, plaintiff relies upon Courts v. Aldridge, 190 Okl. 29, 120 P.2d 362. A conflict of testimony pertaining to this issue, requires that we first analyze Courts v. Aldridge. By its judgment in the case before us, the trial court held the transfers were real and not illusory. On the basis of the tests used in Courts v. Aldridge, we conclude and hold that the judgment of the trial court is not against the clear weight of the evidence.

In Courts v. Aldridge the litigable contest was between Hattie Lou Aldridge, the surviving widow of C. J. Aldridge, and the 9 adult children of C. J. by a former wife. Hattie claimed 1⁄10 of C. J.'s property by right of inheritance including all his real estate which 22 days before his marriage to Hattie, he conveyed purportedly to Alice Courts, his daughter, by two deeds absolute in form, dated February 14, 1922. The deed were not recorded until February 1926. Aldridge died intestate in 1935. Hattie did not learn of the recorded deeds until after C. J.'s death. After the execution of the deeds, C. J. remained in possession and control of the real estate, collected all the income therefrom, rented parts of the real estate, listed the real estate in his own name for purposes of taxation, paid all the taxes, taking the receipts in his own name, paid all the interest on the mortgages, signed documents asserting ownership, offered to sell a part of the real estate, applied for a loan on part of it and otherwise used it as an owner until his death. On this fact basis, Hattie alleged that C. J. made the conveyances in a fraudulent attempt to defeat her rights of succession; that C. J. did not intend to divest himself of ownership of the property; that the beneficial ownership was never conveyed by C. J.; that the deeds he executed were fictitious and illusory.

On the basis of the foregoing, we held:

"The evidence justified the finding of the trial court that Aldridge did not intend by the conveyances to Alice Courts to divest himself of the ownership, control and enjoyment of the property.

"A resulting trust arises where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case a trust is implied or results in favor of the grantor whom equity deems to be the real owner."

Turning now to the real estate involved in the case before us, following its inheritance from the father, Guverien Thompson, who died in 1944, the properties were operated as a family enterprise by Maggie Thompson, the surviving wife and the children, Charles Thompson, Maudie Firebaugh and Nellie Mae Thompson Irvin. The mother, Maggie, was regarded as the manager. In November or December of each year the family would meet at Maggie's home to consider the past year's operations. It was the duty of Charles to compile the figures at the year end for income tax purposes based upon information supplied by Maggie. The information Charles compiled was distributed to Maggie, the mother, and the two daughters. The information

submitted to the accountant for income tax purposes was always submitted on a form prepared by Charles showing complete information on the farm operations including income and expenses such as taxes, depreciation and operating expenses and showing the proper disposition of net income.

For the year 1962, and prior years, plaintiff's wife, Nellie Mae Thompson Irvin, would attend the family meetings in which the farm operations for the past year were discussed and plans for the future were considered. However, after Nellie Mae executed the deeds covering the farms to her mother, brother Charles and sister Maudie Firebaugh, she did not attend any family meetings in which farm operations were considered and played no part in farm operations.

The deeds were executed by plaintiff's wife, Nellie Mae, at a time she lay ill with a malignant tumor in an Enid hospital. Austin Firebaugh, Maudie's husband, testified that Nellie Mae requested him to have the deeds drawn; that at his request they were drawn by Joe Houk, an attorney at Fairview, and were then taken by him to the hospital at Enid. After a notary public was found in the hospital the deeds were executed by plaintiff's wife. Plaintiff was not present at the time of their execution. According to Austin, Nellie Mae at an earlier date had requested him to have the deeds prepared.

There was some testimony that at the time the deeds were executed by Nellie Mae her relations with her husband were, and had been for some time, rather strained. He was not informed of their contemplated execution nor present at the time and place of their execution.

Notwithstanding Nellie Mae's withdrawal from the family farm meetings and farm operations after her execution of the deeds, Nellie Mae continued to receive that share of the net income from the farm operations that represented her ⅔th interest. Moreover for the first year after her death the ⅔th part of farm net income was paid to the plaintiff as administrator of her estate. In-

come tax returns were prepared and filed by each of the parties after the execution of the deeds in December 1962, in the same way the returns had been prepared and filed in prior years.

The accountant who prepared the returns was never informed of the recorded deeds and Charles Thompson supplied the information to the accountant on the same forms after the execution of the deeds that were used prior to the execution of the deeds.

Charles Thompson, the brother, and Maudie Firebaugh, the sister, each explained that they continued to disburse to Nellie Mae the share she formerly received as a matter of deliberate decision by them because Nellie Mae needed the money and to continue to do it the same way as in the past distributed the burden of the gift to Nellie Mae in proper proportions among the mother, brother and sister. No gift tax returns were filed. This same distribution was made the year following Nellie Mae's death to plaintiff as administrator of her estate as a means of helping defray the funeral expenses.

Counsel for appellant and counsel for appellees each give a different significance to hearsay testimony of plaintiff's witness, Lila Hendricks, a close neighbor and friend of plaintiff and his wife, which was nevertheless admitted and considered by the trial court, probably as an exception to the hearsay rule. This testimony follows:

"Q. Mrs. Hendricks, would you relate your conversation of this February 20, 1964 with Nellie Irvin in your home?

"A. You want me to tell just what—

"Q. Just what she said to you as best as you can remember.

"A. She said while she was crying, she said 'Lila, do you know what my folks done to me, they took everything I had, my own folks; they took everything I had.'

"Q. Now, did you have other conversations with her, did she make other statements to you on this day?

"A. Only that she was broken hearted over the fact that she didn't know what she would do, they had taken everything she had."

This same witness testified that plaintiff's wife could not stand her sister, Maudie Firebaugh, in the face of Maudie's testimony that she and her sister, Nellie Mae, always had been and were very close.

As we reflect upon the exigencies of human relations, especially family relations, we conclude that under a variety of circumstances the conduct of Nellie Mae and of all the members of the Thompson family coud be regarded as consistent with either the assumption that Nellie Mae's conveyances were real or, on the other hand, that they were illusory for the purpose of masking an effort to defeat an expectant opportunity of her husband to inherit. The trial court in the course of his oral summation of the testimony from the bench leading to his rendition of judgment for the defendants remarked: "It is a close case."

We must say that the facts of this case differ markedly in one respect from the facts in Courts v. Aldridge, supra. This difference is in the continuing scope and nature of the control exercised by Aldridge over his real property after his transfer to his adult daughter by a former marriage compared with the absence of any control exercised by Nellie Mae after her transfer of her real property to her mother, Maggie, brother Charles and sister Maudie.

■ In fact we agree that Lila's testimony quoted in question and answer form above, carries the indication that Nellie Mae believed she had placed her property beyond her control. In this connection it is to be observed that the count plead in paragraph 9 of plaintiff's amended petition does not state that Nellie Mae's transfer was the result of duress but on the other hand was a voluntary effort to make an illusory transfer of her real property. Moreover in a case of this kind where the effort is made to set aside conveyances of real property, the proof must be clear and convincing. Nis-

bet v. Midwest Oil Corporation, Okl., 451 P.2d 687.

This is surely a case that we cannot substitute our judgment for the judgment of the trial court whose remarks at the time of judgment indicate he was careful to observe the witnesses and assess their testimony, especially when we conclude as we do here that the trial court's judgment is not against the clear weight of the evidence. Marshall v. Amos, Okl., 471 P.2d 896.

Affirmed.

All Justices concur.