Roy **HARRELL** and J. W. **Wilkinson**,
Plaintiffs-In-Error,

v.

The **BANK OF WILSON**, Defendant-In-Error.

No. 42403.

Supreme Court of Oklahoma.

Sept. 10, 1968.

Gene M. Gardner, Duncan, for plaintiffs-in-error.

Earl E. LeVally, Healdton, Cund, Garvin & Bonney, Duncan, for defendant-in-error.

DAVISON, Justice.

This is an appeal by Roy Harrell (defendant below) and J. W. Wilkinson from a judgment in favor of The Bank of Wilson (plaintiff below) sustaining garnishments against a portion of the proceeds derived from the sale of a homestead. The question presented is whether, under the facts and circumstances, such proceeds were exempt from the garnishments.

On June 16, 1965, the plaintiff Bank of Wilson filed two suits in the lower court against the defendant Harrell to recover the sums of $2163.75 and $805.65, with interest, representing the balances due the plaintiff on two notes and chattel mortgages of Harrell after crediting the proceeds of the sale of two automobiles covered by the mortgages. On the same date the plaintiff procured the issuance of garnishment summons in both cases for service upon Edward R. Johnson and Gladys N. Johnson as garnishees, which were served upon Harrell and the Johnsons on June 23, 1965 and June 24, 1965, respectively. On July 1, 1965, the garnishees Johnsons answered that they were indebted to the defendant Harrell and his wife Joyce Jean Harrell, jointly, upon a promissory note dated March 25, 1964, in the original amount of $9500, payable, including principal and interest, at the rate of $100.77 per month, which was secured by a mortgage on real estate in Carter County, Oklahoma, and that they had paid the payments to date and the principal balance was owing in accordance with the note terms. On July 23, 1965, a default judgment was rendered against Harrell in each of the cases for the amount prayed for in the respective actions. There is no dispute concerning the issuance and service of the garnishment summons or as to the validity of the money judgments against Harrell.

Thereafter, Mrs. Harrell was served with notice to show her interest in the garnished funds and she filed motions to dissolve the garnishment. The cases were combined for a hearing on this motion and on October 21, 1965, the court found from the evidence that the note and mortgage executed by the Johnsons and $2000 cash paid by the Johnsons represented the proceeds from the sale of the Harrells' Carter County homestead; that the $2000 was deposited in the Harrells' savings account and had been pledged for the acquisition of a new home (in Stephens County); and that the Harrells intended to reinvest at last a portion of the proceeds of the sale in the new homestead. The court ordered the garnishment dissolved as to "Joyce Jean Harrell, and her interest in and to said proceeds from said sale." It appears that, by circumstances not necessary to relate, the note and mortgage were in the possession of the plaintiff, and on January 28, 1966, the court ordered the note and mortgage deposited with the Court Clerk; vested a one-half interest in the note and mortgage in Joyce Jean Harrell; and directed the Johnsons to pay one-half the monthly payment to her, and pay the other one-half to the Court Clerk to await the further order of the court. This order became final and must be regarded as concluding the litigation as to Harrell's wife Joyce Jean Harrell, and the one-half interest in the note and mortgage vested in her.

On May 11, 1966, Roy Harrell and Joyce Jean Harrell were divorced. The $2000

cash portion of the proceeds of the sale of the Carter County homestead, on deposit in the Harrells' savings account, had been credited to the purchase of the new homestead in Stephens County and in the divorce decree these funds were declared to be the sole and separate property of Mrs. Harrell.

Thereafter, on May 25, 1966, Harrell and Wilkinson filed an application asking the court to decree the note and mortgage to belong to Wilkinson and Joyce Jean Harrell in equal shares. It was alleged that the note and mortgage were proceeds of the sale of the Carter County homestead and was being invested in the new Stephens County homestead. It was further alleged that Harrell had assigned his one-half interest in the note and mortgage to his attorney on August 9, 1966, as attorney's fees and that the attorney, by agreement with Harrell, assigned the interest to Wilkinson for a cash payment from Wilkinson. We make the observation at this point that the court had previously vested a one-half interest in the note and mortgage in Joyce Jean Harrell and that the $2000 had already been credited on the purchase of the new homestead. We also point out that the assignment by Harrell was subsequent to the plaintiff's garnishment. Under these circumstances the issue presented to the lower court was the status of the remaining one-half interest in the note and mortgage that Harrell claimed and had assigned with the apparent consent and without any objection by Joyce Jean Harrell.

These two cases were combined for hearing. The lower court held that Harrell's part of the proceeds from the sale of the Carter County homestead were not exempt from garnishment and sustained the garnishments. The court found that the Carter County property was the Harrells' homestead on March 25, 1964, when they sold it to the Johnsons for $2000 cash and took back a note and mortgage for $9500; that by agreement of the Harrells, one-half of the note and mortgage was Roy Harrell's and one-half was Joyce Jean Harrell's; that about June 17, 1964, the Harrells acquired the new homestead in Stephens County at a purchase price and value of $6500, and the $2000 cash was applied on the purchase price; that the Harrells were divorced on May 11, 1966, and the new homestead was awarded to her; that the $2000 cash plus the one-half of the Johnsons' note and mortgage, which was set over to Joyce Jean Harrell, equals the $6500 purchase price and value of the new homestead; that the garnishments were prior in time to the assignments and that Wilkinson had knowledge thereof; and that Harrell did not in good faith intend at the time of the sale of the old homestead to invest his part of the proceeds in another homestead.

From our examination of the record and the court's judgment it appears that the court's holding that Harrell's one-half interest was not exempt from garnishment was based on the conclusion that under the facts and circumstances the entire $6500 purchase price of the new homestead was derived from the proceeds of the sale of the old homestead, and further that Harrell had no intent to invest his share of such proceeds in a new homestead.

Harrell and Wilkinson contend that the Johnsons' note represented the proceeds of the Harrells' homestead and was thus exempt from the claim of any of Harrell's unsecured creditors, and the trial court should have set his interest in the note aside to him or his assigns as exempt property.

This proposition of error on its face lacks an essential fact, or proof of such fact to the trial court's satisfaction, which must exist in order to render such proceeds exempt from garnishment by creditors. It is well established in this State that in order for the proceeds of a voluntary sale of the homestead to be exempt from garnishment for debts not within the exceptions provided in Art. 12 of the Constitution there must exist at the time of sale a good faith intent to reinvest the proceeds in another homestead, and that the reinvestment be made within a

reasonable time. Cases so holding will be hereinafter cited. The parties have briefed and addressed their arguments to this proposition of law.

The record of the evidence reflects that Joyce Jean Harrell was the owner of the old homestead in Carter County at the time of her marriage to Roy Harrell in August, 1963, and that before and after the marriage Harrell was engaged in the used car business and transacted his banking business with the plaintiff. On March 25, 1964, the Harrells sold the homestead to the Johnsons for $11,500, who paid $2000 and gave a $9500 note and mortgage to the Harrells on the property payable $100.77 per month. Harrell testified that he deposited the $2000 in the Harrells' saving account and identified a deposit slip (not introduced in evidence) of the claimed deposit, but it was brought out on cross-examination that the deposit slip was dated *February 25,* 1964. The note and mortgage were left with the plaintiff for safekeeping. The evidence reflects that the Harrells began looking for a new home and on April 7, 1964, they bought the new homestead in Stephens County for $6500 and that they borrowed the money from the plaintiff to make the purchase, and pledged the $2000 savings account to payment of the loan. It appears that later, at some undisclosed time, the note to plaintiff was renewed and secured by a mortgage on the new homestead. Harrell testified that he tried on one occasion to sell the note and mortgage for the purpose of giving the children of his wife from her previous marriage "half out of the place" and pay the balance on the new home. Joyce Jean Harrell also testified she wanted her three children by her previous marriage to share in the money derived from the sale of the old homestead and that for some months $60 of the monthly payment from the Johnson mortgage was used to pay an installment due on a truck bought by one of her children.

The evidence further shows that on August 9, 1965 (after the garnishment), Harrell was having difficulty with his credi-

tors, including plaintiff, and made a contract with his attorney to represent him in these matters and to assign to the attorney a one-half interest in the savings account and the Johnson note and mortgage. The assignment of the one-half interest in the note and mortgage was made and was reassigned to Wilkinson. Harrell stated Wilkinson paid him with a check in the amount he did not remember, but that he endorsed it to the Sheriff's department, and with some of his own money, used it to pick up about $5000 in hot checks. Harrell testified his wife owned some interest in the Johnson note and mortgage, but he did not; that he sold it to Wilkinson and he had no further interest in it.

■■ From our examination of the entire record we cannot say that the findings of the court are not reasonably supported by the testimony. Both Harrell and his wife expressed an intent to share the proceeds of the sale with her children to the extent of one-half thereof. This would not constitute either an intent or a use of that portion of the proceeds to acquire a new homestead. A complete analysis of all the facts and the orders and final judgment of the lower court discloses that the court set over to Joyce Jean Harrell and did protect and release from the garnishments a sufficient portion of the proceeds from the old homestead to satisfy the full purchase price of the new homestead. The fact is that it is not within the power of Harrell to invest such proceeds in the new homestead. The lower court concluded the evidence justified the conclusion that Harrell had no good faith intent to invest his share of the proceeds of the old homestead in a new homestead, and from the conduct of Harrell and his wife, culminating in the assignment by Harrell of his one-half interest therein, we find that such conclusion was reasonably supported by the evidence.

In Field v. Goat, 70 Okl. 113, 173 P. 364, 1 A.L.R. 478, we held as follows:

"The exemption of the homestead of the family, provided in article 12 of the Constitution, extends to the proceeds of

a voluntary sale of such homestead which are in good faith intended, at the time of such sale, to be invested in another homestead, and such proceeds are exempt from seizure by process of garnishment for debts not within the exceptions provided in article 12 of the Constitution."

In State ex rel. Freeling, Atty. Gen. v. Brown, 92 Okl. 137, 218 P. 816, we again stated the rule of law announced in the Field case and further held that the investment in the new homestead must be made within a reasonable time under the circumstances in the particular situation.

See also Farmers' State Bank of Newkirk v. Hess, 120 Okl. 210, 251 P. 73, in which we held that the evidence in that case was sufficient to show a good faith intent to invest the proceeds of the homestead in another homestead.

The cases cited require that there be a good faith intent, at the time of the voluntary sale of the homestead, to invest the proceeds of the sale in another homestead, and that the proceeds be invested in the new homestead within a reasonable time, in order for the proceeds to be exempt from seizure by garnishment for debts not within the exceptions provided in Art. 12 of the Constitution.

In Pendergraph v. Edwards, Okl., 283 P.2d 823, and Riley v. Riley, 184 Okl. 473, 88 P.2d 358, we held as follows:

"Applications to dissolve garnishments address themselves to the trial court alone, and this court will not undertake to weigh the evidence presented when there is testimony reasonably supporting the finding as made by the trial court."

Harrell and Wilkinson cite Kelough v. Neff, Okl., 382 P.2d 135, and Japp v. Sapula State Bank, 90 Okl. 56, 215 P. 1059. The cited cases held that a personal judgment against the owner of a homestead was not a lien upon the homestead and was not a lien upon the proceeds of the sale of the homestead. They did not involve the question of validity of a garnishment of the proceeds of a sale of the homestead

and a determination of whether or not the proceeds were exempt from garnishment. The cases are not in point.

Harrell and Wilkinson cite Rutledge v. Johansen, 10 Cir., 270 F.2d 881. The case is not applicable. It holds that a transfer by a bankrupt of his Oklahoma homestead to a creditor for an antecedent debt within four months preceding bankruptcy was a nonvoidable preference under the law and circumstances.

Harrell and Wilkinson also cite Farmers' State Bank v. Hess, supra (120 Okl. 210, 251 P. 73) to support the conclusion that "A garnishment against the proceeds of a sale of homestead stands in no better shoes than a judgment against the homestead itself." The decision does not so hold. It held that the evidence was sufficient to support the conclusion of the trial court that there was a good faith intention at the time of the sale of the homestead to invest the proceeds in another homestead, and consequently the proceeds were exempt from garnishment.

For the reasons herein set forth the judgment of the lower court is affirmed.

All the Justices concur.