LaDonna Lea BURROWS,
now Guinn, Appellant,

v.

Edwin BURROWS, W.E. Burrows
and Jewell Burrows, husband
and wife, Appellees.

No. 82913.

Supreme Court of Oklahoma.

Nov. 29, 1994.

Robert T. Keel, Oklahoma City, for appellant.

Austin R. Deaton, Jr., Ada, for appellees, W.E and Jewell Burrows.

Thomas S. Landrith, Ada, for appellee, Edwin Burrows.

KAUGER, Justice:

The dispositive issue presented on certiorari is whether the trial court erred in granting summary judgment in favor of a father who claimed a homestead exemption in defending an action for fraudulent conveyance to prevent the collection of past-due alimony and child support. We find that, under the facts presented here, the father's attempt to convey property subject to a homestead exemption to avoid payment of past-due support alimony and child support may be fraudulent pursuant to 24 O.S.1991 § 116.[1]

## FACTS

In November of 1983, Edwin Burrows (the father) married LaDonna Lea Burrows (the mother). Subsequently, the couple had a child. Through loans secured from a local bank, they built a home on forty acres of land in Pontotoc County, Oklahoma, which was owned by the father prior to the marriage. On June 10, 1991, the couple divorced; and the mother was awarded custody of their child, support alimony, and child support. The father was awarded the home and the

---

1. Title 24 O.S.1991 § 116 provides in pertinent part:

"A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
1. with actual intent to hinder, delay, or defraud any creditor of the debtor; or

2. without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
a. was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or
b. intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due...."

forty acres.[2] He was also ordered to pay child support, the child's accrued medical expenses and support alimony.[3]

Following the divorce, three judgments were secured against the father in an effort to obtain the money owed as a result of the divorce.[4] On January 15, 1992, the mother began garnishment proceedings to recover a portion of the money from an employer of the father.[5] The father moved to quash the garnishment and requested a hearing. On February 12, 1992, a hearing was held; and the mother was allowed to retain the proceeds she was successful in recovering.

On February 16, 1992, the father conveyed the forty acres he was granted in the divorce decree to his parents, W.E. and Jewell Burrows (parents) for $5,151.04, the amount remaining on his mortgage debt on the property. In exchange for the conveyance, the parents agreed to allow the father to remain on the property rent-free for his lifetime.

Subsequently, the mother sued the father and his parents alleging that: 1) the father had three judgments against him for past-due support alimony, child support, and attorney's fees totaling $6,713.48; 2) he was behind on current child support in the amount of $5,577.49; 3) the father's only asset was his home and the forty acres in Pontotoc County, Oklahoma; 4) he transferred the property for inadequate consideration[6] to his parents for the purpose of defrauding his ex-wife and hindering the collection of the debt; and 5) the parents knew that their son was insolvent and faced a lien being filed against him when he sold them the property.

The father and his parents moved for summary judgment arguing that the property he conveyed was his homestead and that it was exempt from the claims of creditors and from a fraudulent conveyance action.[7] Prior to the conveyance, the father did not file for

2. Pursuant to the divorce decree, the father assumed the indebtedness of the property which at the time of the divorce was $7,906.32.

3. The father was ordered to pay $305.69 in child support, $3,075.30 in medical expenses for the child, and a lump sum of $4,500.00 and eighteen monthly payments of $250.00 in support alimony.

4. On September 10, 1991, a judgment for attorney's fees and expenses totaling $3,675.72 was entered against the father. According to the journal entry, the purpose of the attorney's fee award was to free the mother from the obligation to pay the fees so that she could support the minor child. The father's obligation to pay the fees constituted support and maintenance for the benefit of the mother and the minor child. The attorney's fees award was support related. Arguably, had the father paid the support alimony and child support which he owed, there would not have been a judgment for the attorney's fees. A journal entry dated January 10, 1992, states that on December 9, 1991, a hearing was held in which the father was found guilty of indirect contempt of court for failure to pay child support and support alimony. The mother was also awarded back child support and support alimony totaling $2,472.76. On October 8, 1992, attorney's fees and costs totaling $565.00 were again entered against the father. We note that it does not appear from the record that the attorney imposed a lien against the property of the debtor pursuant to the support related attorney's fees judgments. In *Sooner Federal Sav. & Loan Ass'n v. Mobley*, 645 P.2d 1000, 1001 (1981) a couple divorced and the decree awarded support

alimony and attorney's fees. The decree did not, however, place a lien on the homestead which was awarded to the husband. Subsequently, when a bank foreclosed on the property, the attorneys' attempted to foreclose on their awards. We held that because the claims were only ordinary money judgments, they could not be enforced against the homestead exemption. We note that a portion of the money owed to the mother in the present case may, in part, be attorney's fees. However neither party argued the effect of these fees as applied to the homestead exemption statutes in the trial court or on appeal. Parties waive issues by failing to brief them. *American First Abstract v. Western Info. Syst.*, 735 P.2d 1187, 1189 (Okla.1987). Consequently, we do not address the issue.

5. The mother sought garnishment for $6,148.48 interest on past unpaid debts, attorney's fees, and costs.

6. The mother's affidavit alleges that the value of the property at the time of the divorce was $48,000.00.

7. Actions for fraudulent transfers are brought pursuant to the Uniform Fraudulent Transfer Act (the Act), 24 O.S.1991 §§ 112 et seq. Title 24 O.S.1991 § 113, see note 10, infra, defines an asset as property of a debtor, but excludes property to the extent it is generally exempt under non-bankruptcy law. The Court of Appeals held that because the property conveyed in the present case was the father's homestead and could withstand a claim against alimony and child support, the Act would not apply.

homestead exemption with the county assessor.[8] The parents have their own homestead located on other property in the same county.

◼ The trial court entered summary judgment for the father and his parents. The mother appealed and the Court of Appeals held that: 1) the property was the father's homestead when he conveyed it to his parents;[9] 2) a homestead is exempt from the collection of debts owed to general creditors including alimony and child support debts; and 3) because the property was the father's homestead when he conveyed it to his parents, the transfer may not be set aside as fraudulent.[10] We granted certiorari on July 7, 1994.

## UNDER THE FACTS PRESENTED HERE, THE FATHER'S ATTEMPT TO CONVEY PROPERTY SUBJECT TO A HOMESTEAD EXEMPTION TO AVOID PAYMENT OF PAST–DUE SUPPORT ALIMONY AND CHILD SUPPORT MAY BE FRAUDULENT PURSUANT TO 24 O.S.1991 § 116.

◼ On November 15, 1993, the father and his parents moved for summary judgment arguing that the property he conveyed to his parents was his homestead and that pursuant to 31 O.S.1991 § 1,[11] it was exempt from attachment, execution, or other forced sale. They relied on *Oklahoma State Bank v. Van Hassel*, 189 Okla. 48, 114 P.2d 912, 914 (1941) for the proposition that a homestead may be freely conveyed and that the purchaser takes free of any judgment lien or debts of the seller.

We find that *Van Hassel* is distinguishable from the instant case on its facts and is not garnishment proceedings. We held that proceeds of a sale of the homestead were exempt from garnishment where the debtor intended to invest the proceeds in another homestead. Here, the father conveyed the property to his parents because his parents paid off his mortgage. The father did not receive the proceeds from the sale, and the mother is not attempting to reach the proceeds of the sale. Instead, she seeks to set aside the conveyance as fraudulent.

8. According to a letter from the Pontotoc County Assessor, the property was assessed in 1991 and did not have a homestead on it. Filing for a homestead exemption with the county assessor allows a property owner to claim an exemption from the ad valorem tax assessed on real property. See, 68 O.S.1991 §§ 2887–2901.

9. In defending the father's motion for summary judgment, the mother asserted that only two of the forty acres the father conveyed to his parents were utilized as a homestead while the remaining thirty-eight acres should not qualify as a homestead exemption. Whether land has been impressed with homestead character is a question of fact. *Massey v. Priddy*, 301 P.2d 684, 685 (Okla.1956); *Glaze v. Drawver*, 189 Okla. 402, 117 P.2d 544, 545–46 (1941); *Morey v. James*, 136 Okla. 174, 276 P. 707, 708 (1928). The Court of Appeals determined that the father's entire property was homesteaded. In her petition for certiorari, the mother does not dispute whether any or part of the property was in fact the father's homestead prior to the conveyance. Instead, the mother relies on *Harrell v. Bank of Wilson*, 445 P.2d 266, 269–70 (Okla.1968) for the proposition that the homestead exemption does not apply to the father or his parents because: 1) once the father conveyed the property to his parents he ceased to have an interest in it; 2) he did not attempt to make an effort to establish another homestead; and 3) the father's parents claimed their own homestead on other property. Because we have determined that a homestead exemption cannot be used to defeat support alimony and child support claims under the facts presented, we need not address the issue of the status of the father's property after the conveyance. We note, however, that *Harrell* is not dispositive of the present case because it involved an attempted seizure of money, which included proceeds from the sale of a homestead, through

10. Title 24 O.S.1991 § 113 provides in pertinent part:

... "2. 'Asset' means property of a debtor, but the term does not include:
a. property to the extent it is encumbered by a valid lien; or
b. property to the extent it is generally exempt under non-bankruptcy law; ..."

11. Title 31 O.S.1991 § 1 provides in pertinent part:

"A. Except as otherwise provided in this title ... the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:
1. The home of such person, provided that such home is the principal residence of such person...."
This statutory provision of the homestead exemption is a vitalization of the constitutional homestead provision of the Okla. Const. art. 12, § 1 which provides in pertinent part:
"The homestead of any family in this State, not within any city, town, or village, shall consist of not more than one hundred and sixty acres of land, which may be in one or more parcels, to be selected by the owner...."

dispositive of the issue of whether a homestead exemption may be used to defeat alimony and child support judgments. *Van Hassel* involved a bank creditor attempting to set aside the transfer of a homestead in order to collect on a past-due note. Here, the father conveyed his property to his parents to evade payment of alimony and child support to the family in which the homestead originated.[12]

 The purpose of the Act is to allow a creditor the opportunity to invalidate the transfer of assets made by a debtor if the transfer has the effect of placing assets out of reach of present and future creditors.[13] Spouses, to the extent they are asserting fraudulent conveyance claims against the other spouse attempting to collect for alimony and child support, may utilize the Act.[14] The determinative question is whether the homestead exemption can be used to defeat past-due alimony and child support claims under the facts presented. The mother cites *Breedlove v. Breedlove*, 100 Nev. 606, 691 P.2d 426, 428 (1984) for the proposition that property cannot be transferred under the guise of a homestead exemption to defeat child support and alimony judgments.

In *Breedlove*, a couple divorced and the father was ordered to pay child support. Subsequently, the father defaulted on his child support payments and the mother obtained a judgment for child support arrearages and attorney's fees. In an effort to frustrate the mother's attempts to execute on the judgment, the father filed for a homestead exemption. The Nevada Supreme Court held that: 1) public policy requires an exception to the homestead laws in cases where a party is seeking to enforce a child support award against the homesteader; and 2) it would be unfair to permit the homestead to be used as a shield to insulate a father from being forced to pay support owed to his children.

The Court recognized that facially the Nevada homestead laws seemed to provide protection against a creditor unless the creditor falls within an express statutory exception and a mother seeking alimony and child support does not. However, it noted that applying the statutory exceptions in a technical fashion would contravene the Legislature's intent and the purpose of the homestead law. The Court found that: 1) homestead laws were designed for making families secure in their home from creditors they are unable to pay; 2) when an ex-wife or child attempts to enforce court-ordered support, the rationale behind the homestead exemption no longer applies because the policy of protecting the family would no longer be served by such an

12. In *Van Hassel*, 189 Okla. 48, 114 P.2d 912, 914 (1941), a husband and wife defaulted on a loan. The husband, immediately prior to his death conveyed title in the couples' homestead property to his wife. Subsequently, the wife conveyed the property for inadequate consideration to her son who lived on the homestead. The bank attempted to set aside the conveyance to satisfy the note. The Court found that: 1) the homestead character of the property was not lost when the husband transferred title to his wife; and 2) because the land was her homestead, the wife could freely convey the property to her son free of the creditor's claims. We were not confronted with the same public policy considerations in *Van Hassel* as are in the present case. For the same reason, other decisions in which we held that a homestead may be conveyed by the owner and the purchaser may take it clear of all liens or debts except those enumerated exceptions are also inapplicable. See, *Dreyfus v. Dickason*, 176 Okla. 477, 56 P.2d 881, 882 (1936); *W.T. Rawleigh Co. v. Groseclose*, 174 Okla. 193, 49 P.2d 1085, 1087 (1935); *Japp v. Sapulpa State Bank of Sapulpa*, 90 Okla. 56, 215 P. 1059, 1061–62 (1923); *Hedgpath v. Hudson*, 61 Okla. 121,

160 P. 604, 605 (1916); *Gray v. Deal*, 50 Okla. 89, 151 P. 205, 207 (1915).

13. *Farm Credit Bank of Wichita v. Woodring*, 851 P.2d 532, 538 (Okla.1993). Title 24 O.S.1991 § 116, see note 1, supra.

14. *Sims v. Sims*, 150 Okla. 138, 300 P. 692, 695–96, 79 A.L.R. 414 (1931) (A wife is a quasi-creditor to the extent she may assert the Act where the husband conveyed real property to attempt to defeat collection of alimony.); *Bank Indep. v. Coats*, 591 So.2d 56, 58–59 (Ala.1991) (Alimony and child support are debts for purposes of dealing with fraudulent conveyances and assignments.); *Rich v. Rich*, 185 W.Va. 148, 405 S.E.2d 858, 862 (1991) (An ex-wife who obtained a court order finding her former husband in arrears for child support was a creditor for purposes of the Act.). In *Commons v. Bragg*, 183 Okla. 122, 80 P.2d 287, 291 (1938) we noted that it is not inconsistent to recognize that although a spouse is not a creditor who is subject to workers' compensation benefit exemptions, the spouse is a quasi-creditor for fraudulent conveyance purposes.

application; and 3) a former family member attempting to enforce a support judgment is not the sort of creditor which the homestead laws seek to defeat.

 We find the *Breedlove* reasoning persuasive.[15] This Court has recently noted that public policy dictates that exemption laws, such as homestead provisions, should be liberally construed to comport with their beneficent spirit of protecting the family home.[16] Although the statutory exemption does not require that a person have a family in order to claim it,[17] the homestead exemption was intended to protect the entire family in its occupancy from improvidence and the urgent demands of creditors,[18]—to prevent the family from becoming public charges.

The homestead exemption is granted by law for the benefit of the family occupying the property as a home.[19] It vests jointly in a husband and wife for the benefit of themselves and the family.[20] Its purpose is to afford protection to the family, not to enable one to escape just liabilities or to perpetrate a fraud or injustice.[21]

 Under Oklahoma's homestead exemption statute, the principal residence of a person is exempt from attachment, execution, and the forced sale for the payment of debts.[22] The homestead exemption is not applicable to every type of debt. It does not apply to debts arising out of mortgages for the purchase of the property, taxes, and work and material used in constructing im-

15. In *Breedlove v. Breedlove*, 100 Nev. 606, 691 P.2d 426, 428 (1984), the debtor relied on *Putz v. Putz*, 572 P.2d 970 (Okla.1977) for the proposition that because he had a second wife and lived on the homestead with her and her children, the homestead laws should protect him. Although the court rejected this argument, it does not affect the persuasiveness of its reasoning as applied to the facts presented here. In *Putz*, we held that a homestead purchased by a husband and his second wife is not subject to a prior alimony judgment lien granted in favor of his first wife. Our decision in *Putz* is not dispositive of the present case. Here, the father did not acquire new property after the divorce, instead he remained on the original homestead.

16. *In re Martin*, 875 P.2d 417, 422 (Okla.1994).

17. The Constitutional provisions regarding homestead exemptions refer to the family, Okla. Const. art. 12, § 1, see note 11, supra; Okla. Const. art. 12, § 2, see note 23, infra. The statutory homestead scheme which vitalized the constitutional provisions referred to the homestead property as being reserved to the head of every family. Title 31 O.S.1951 § 1 provides in pertinent part:

"A. The following property shall be reserved to the head of every family residing in the State, exempt from attachment or execution and every other species of forced sale for the payment of debts except as herein after provided.
1. The homestead of the family shall consist of the home of the family whether the title to the same be lodged in or owned by the husband or wife ..."

In 1957, the statute was amended to reserve the property to every person owning a home and residing therein or to the head of every family. See, 31 O.S.Supp.1957 § 1. In 1980, the statute was again amended to provide:

"A. Except as otherwise provided in this title ... the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided.
1. The home of such person, provided that such home is the principal residence of such person ..."

The current version of this subsection remains unchanged. Title 31 O.S.1991 § 1, see note 11, supra. We have not previously addressed the effects of these statutory amendments as they relate to the family requirement referred to in the Constitution. While the current statute does not require that a person have a family in order to claim an exemption, we do not believe this amendment was intended to allow the homestead exemption to be used to defeat support alimony and child support when such a use clearly violates the historical purpose of the constitutional homestead exemption and public policy.

18. *In re Martin*, see note 16 at 422, supra; *Matter of Estate of Wallace*, 648 P.2d 828, 831 (Okla. 1982); *In re Carothers' Estate*, 196 Okla. 640, 167 P.2d 899, 902 (1946); *Hensley v. Fletcher*, 172 Okla. 19, 44 P.2d 63, 65 (1935).

19. *Wood v. Biggs*, 424 P.2d 59, 60 (Okla.1966); *State Nat'l. Bank v. Lokey*, 112 Okla. 82, 240 P. 101, 103 (1925); *Pettis v. Johnston*, 78 Okla. 277, 190 P. 681, 693 (1920).

20. *Matter of Estate of Wallace*, see note 18 at 831, supra.

21. *Glaze v. Drawver*, see note 9, 117 P.2d at 545, supra; *Hensley v. Maxwell*, 172 Okla. 21, 44 P.2d 60, 62 (Okla.1935).

22. Title 31 O.S.1991 § 1, see note 11, supra.

**990**

provements on the property.[23] Debts arising out of alimony and child support obligations are not expressly listed as an exception to the homestead exemption. However, this does not indicate that the homestead exemption was intended to be used to defeat claims arising from family support obligations.

Under the facts of the present case, we cannot say that the mother seeking to enforce the support judgments is the kind of creditor to which the homestead exemption was meant to apply. This reasoning is consistent with our past pronouncements in *Haven v. Trammell,* 79 Okla. 309, 193 P. 631, 633 (1920); *Commons v. Bragg,* 183 Okla. 122, 80 P.2d 287, 290 (1938); *Meadows v. Meadows,* 619 P.2d 598, 600–601 (Okla.1980); and *Abrego v. Abrego,* 812 P.2d 806, 808–09 (Okla.1991). In *Trammell,* recognizing that the homestead is exempt from attachment, execution, or forced sale for the payment of debt, we stated in the third syllabus:

> "Where in a divorce, alimony in money is decreed, which is adjudged to be a lien upon all the real estate owned by the defendant in the state, the homestead of the defendant [husband] owned at the time such judgment is rendered, may be legally levied upon and sold for the payment of the said alimony."

In *Bragg,* we held that although workers' compensation awards were exempt from the claims of creditors for collection on a debt, a wife seeking alimony and support for the minor children is not a creditor, nor is her claim a debt. We recognized that the Legislature in enacting the workers' compensation laws intended that benefits of the act flow to the injured worker and their dependents in order to afford them a living and prevent them from becoming public charges. It would be anomalous to use an exemption from the claims of creditors to avoid obligations to support children when the exemption was in fact created to assure their support.

Similarly, in *Meadows,* we recognized that statutes exempting property from the legal process against a husband are not applicable to a claim for alimony or support. We held that workers' compensation awards and social security disability payments are not exempt from alimony claims and could be considered in contempt proceedings arising from failure to pay alimony. In *Abrego,* applying a statute which exempted certain life insurance proceeds from the claims of creditors, we found that children seeking parental support are not creditors within the meaning of the statute. These decisions support a finding that the homestead exemption may not be used as a shield to insulate a father from being forced to pay the support he owes to his children. We find that the purpose of the homestead exemption is to protect the family and make it secure. As a matter of public policy, allowing the father—under the facts presented—to use the homestead to defeat his obligation to support his child would contravene the purpose of the exemption.[24]

---

23. Title 31 O.S.1991 § 5 provides:
 "The exemption of the homestead provided for in this chapter shall not apply where the debt is due:
 1. For the purchase money of such homestead or a part of such purchase money.
 2. For taxes or other legal assessments due thereon.
 3. For work and material used in constructing improvements thereon."
 This statutory provision of the homestead exemption is a vitalization of the constitutional homestead provision of the Okla. Const. art. 12, § 2 which provides in pertinent part:
 "The homestead of the family shall be, and is hereby protected from the forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for the work and material used in constructing improvements thereon ..."

24. Other jurisdictions have considered the effect of alimony and child support obligations as applied to the homestead laws and other exemption statutes. Under various factual settings, courts have espoused various views regarding the application of homestead laws to alimony and child support claims. Generally, claims for alimony or support prevail over statutes exempting property from the legal process to enforce a debt because such a claim is not a debt and an award of alimony or child support does not create a debtor-creditor relationship. See e.g., *Kendrick v. Kendrick,* 271 Ala. 372, 124 So.2d 78, 79 (1960) (Exemption provision exempting pension payments from the claims of creditors do not apply to awards for alimony or child support.); *Bickel v. Bickel,* 17 Ariz.App. 29, 495 P.2d 154, 156 (1972) (Homestead exemption did not protect recovery of attorney's fees awarded as part of divorce decree awarding support.) Because the circumstances and policy considerations differ in

■ Parents have a legal duty to support and educate their children and to prevent them from becoming public charges.[25] The duty to support one's minor child is a continuing obligation.[26] Here, the father has yet to fulfill his obligations to support his child. Instead, he conveyed forty acres of property to his parents well below the market value. Apparently, there are no other assets available in which the mother can claim an interest. The family no longer lives together on the homestead. The purpose of the homestead exemption, under the facts presented, is not served. The homestead exemption law does not relieve a person from the obligation to pay child support.[27] The homestead exemption is intended to be a shield, not a sword.[28] Allowing the father to use the homestead exemption as a sword to defeat his obligation to support his child violates the underlying public policy of both Acts.[29]

## CONCLUSION

Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[30]

every case, we need not list all of the cases which have considered the effect of homestead exemptions on alimony and child support claims. However, we note that courts have found in some circumstances the homestead exemption applies, while in others, it does not. See e.g., *Matter of Marriage of Johnson*, 19 Kan.App.2d 487, 872 P.2d 308, 311–312 (1994) (Homestead exemption protects homestead from forced sale to satisfy judgment lien for past-due child support which predated the acquisition of the homestead.); *Application of Jensen*, 414 N.W.2d 742, 746 (Minn.App.1987) (Spouses and children are not outside creditors and cannot be harmed by the use of homestead exemption.); *Gepfrich v. Gepfrich*, 582 So.2d 743, 744 (Fla.App. 4 Dist. 1991) (Homestead laws would not protect former husband from the force sale of house acquired after dissolution of the marriage where husband was claiming the benefits of the homestead exemption law against the very person in which he owes the obligation of support and maintenance.). Although the mother, in the present case was not given a lien in the divorce decree on the homestead, the majority of cases involve circumstances similar to *Haven v. Trammell*, 79 Okla. 309, 193 P. 631, 633 (1920) in which pursuant to a divorce decree a lien was placed on the homestead to secure alimony or child support payments. Under these circumstances, courts generally agree that the homestead exemption does not apply. See e.g., *Wiles v. Wiles*, 871 P.2d 1026, 1028 (Utah.App.1994); *Kobriger v. Winter*, 263 N.W.2d 892, 893–94 (Iowa 1978). See also, Annot. "Enforcement of Claim for Alimony or Support, or for Attorneys' fees and Costs Incurred in Connection therewith, Against Exemptions," 54 A.L.R.2d 1422 (1957).

25. *LeCrone v. LeCrone*, 596 P.2d 1262, 1264 (Okla.1979); Maintenance of a minor child is an enforceable parental duty which cannot be shifted as a burden on the shoulders of others. *Hart v. Hart*, 177 Okla. 428, 60 P.2d 747 (1936).

26. *Wade v. Wade*, 570 P.2d 337, 339 (Okla.1977).

27. *Denzer v. Prendergast*, 267 Minn. 212, 126 N.W.2d 440, 443 (1964).

28. *Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So.2d 267, 271 (Fla.1993).

29. We note that our the finding of a public policy exception to the homestead exemption is limited to the facts presented. Whether the father actually fraudulently transferred the property must be proven by the mother at the trial level. The mother's petition alleged that the father's conveyance to his parents before she was able to collect on past-due support alimony and child support judgments was fraudulent. The petition sought to have the transfer declared void and the judgments declared a lien on the property. The father and his parents answered the petition arguing that the property was his homestead and exempt from the Uniform Fraudulent Transfer Act and that he could transfer the property free of any lien or claim of the mother at anytime for any consideration. In his motion for summary judgment, the father argued that he could convey the property free of the mother's judgment lien relying on *Oklahoma State Bank v. Van Hassel*, see note 12, supra, which we find distinguishable from the present case, see discussion pages 6–7, supra. Should the mother prevail on the fraudulent conveyance claim, she would be entitled to a lien against the property for arrearages in support alimony and child support. See, 43 O.S.Supp.1992 § 134 and 43 O.S.1991 § 135. The parties do not raise the issue of whether the fact that the mother failed to secure a lien against the homestead in the divorce decree should affect the outcome of this case under the facts presented. Nor do the parties cite any authority or make any arguments in support of such a proposition. Consequently, we will not address the issue. *American First Abstract v. Western Info. Syst.*, see note 4 at 1189, supra; *Peters v. Golden Oil Co.*, 600 P.2d 330, 331 (Okla. 1979).

30. *Buckner v. General Motors Corp.*, 760 P.2d 803, 812 (Okla.1988).

The purpose of the homestead exemption is to protect the family from demands of creditors [31]—to prevent the family from becoming a burden on society. Parents have a legal duty to support and educate their children and to prevent them from becoming public charges.[32] Here, the father has yet to fulfill his obligations to support his child. The purpose of the homestead exemption, under the facts presented, is not served.

The mother seeking to enforce the support judgments is not the kind of creditor to which the homestead exemption was meant to apply. The exemption was intended to benefit the family. Allowing a spouse to claim the exemption's benefit against the family to which the spouse owes alimony and child support is contrary to the underlying policy of the homestead exemption. Because—under the facts presented—the homestead exemption may not be used to defeat the collection of past-due alimony and child support, summary judgment was improper.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT REVERSED.**

HODGES, C.J., LAVENDER, V.C.J., and ALMA WILSON, SUMMERS and WATT, JJ., concur.

OPALA, J., concurs in part, dissents in part.

SIMMS and HARGRAVE, JJ., dissent.

SIMMS, Justice, dissenting:

I cannot join the majority in its declaration that alimony and child support indebtedness are public policy exceptions to the homestead exemption, as I agree with the Court of Appeals that any additional exceptions should be created by the legislature, not the courts.

As the majority recognizes, this mother's claims for alimony and child support could have been protected by having the trial court place a lien on father's homestead property to secure performance of his obligations un-

der the divorce decree. See *Sooner Federal Sav. & Loan Ass'n. v. Mobley*, 645 P.2d 1000 (Okla.1982); *Putz v. Putz*, 572 P.2d 970 (Okla.1978); *Whitman v. Whitman*, 430 P.2d 802 (Okla.1967); *Grattan v. Tillman*, 323 P.2d 982 (Okla.1958); *Bussey v. Bussey*, 148 Okl. 10, 296 P. 401 (1931); *Haven v. Trammell*, 79 Okl. 309, 193 P. 631 (1920).

Although the mother failed to protect herself by obtaining a lien, the Court judicially amends the exceptions to the homestead exemption provided by 31 O.S.1991, § 5, and declares father's conveyance fraudulent as a matter of public policy. While this situation presents obvious and substantial public policy considerations, they are concerns which should be addressed and resolved by the legislative process.

The Court is understandably sympathetic to the plight of this mother and child and their frustration with father's conveyance of his only valuable asset. The opinion's potential for harm to real property law, however, may far outweigh its beneficial effects to domestic relations litigants.

I am authorized to state that Justice HARGRAVE joins with me in the view expressed herein.

---

**31.** *Matter of Estate of Wallace,* see note 18 at 831, supra; *In re Carother's Estate,* see note 18, 167 P.2d at 902, supra; *Hensley v. Fletcher,* see note 18, 44 P.2d at 65, supra.

**32.** *LeCrone v. LeCrone,* see note 25 at 1264, supra.